United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 20, 2003**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

_____

m 02-31249

_____

JOHN MACLACHLAN; JAMES BROWN; STEPHEN K. MANLEY;
ALAINA SPURLOCK; BERND STAHR; MICHAEL ZAINOTZ,
ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

Plaintiffs-Appellants,

VERSUS

EXXONMOBIL CORPORATION (SUCCESSOR BY MERGER TO MOBIL CORPORATION),
AS TRUSTEE ADMINISTRATOR AND FIDUCIARY OF RETIREMENT, SAVINGS, SEVERANCE,
SEPARATION, INSURANCE, AND OTHER MISCELLANEOUS EMPLOYEE BENEFIT/WELFARE PLANS OF
MOBIL CORPORATION;
THOMAS C. HARRISON,
AS ASSISTANT ADMINISTRATOR BENEFITS OF EXXONMOBIL CORPORATION, RETIREMENT,
SAVINGS, SEVERANCE, SEPARATION, INSURANCE, AND OTHER MISCELLANEOUS BENEFIT PLANS OF
EXXONMOBIL CORPORATION;
RETIREMENT PLAN,
ALSO KNOWN AS MOBIL RETIREMENT PLAN;
COMPREHENSIVE MEDICAL PLAN,
ALSO KNOWN AS MOBIL MEDICAL PLAN;
DENTAL ASSISTANCE PROVISIONS,
ALSO KNOWN AS MOBIL DENTAL PLAN;
DEPENDENT GROUP LIFE INSURANCE PLAN,
ALSO KNOWN AS MOBIL GROUP LIFE INSURANCE PLAN;
DISABILITY INCOME PLAN;
EMPLOYEE STOCK OWNERSHIP PLAN,
ALSO KNOWN AS MOBIL STOCK PLAN;

EMPLOYEE SAVINGS PLAN,
ALSO KNOWN AS MOBIL SAVINGS PLAN;
LIFE INSURANCE PLAN,
ALSO KNOWN AS MOBIL LIFE INSURANCE PLAN;
PRE-SOCIAL SECURITY PLAN,
ALSO KNOWN AS MOBIL PRE-SOCIAL SECURITY PLAN;
TERMINATION ALLOWANCE PLAN;
EMPLOYEE SEVERANCE PLAN,
ALSO KNOWN AS MOBIL SEVERANCE PLAN;
EMPLOYEE SEPARATION BENEFIT PLAN,
ALSO KNOWN AS SEPARATION BENEFIT PLAN,

Defendants-Appellees.

––––––––––––––––––––––––

Appeal from the United States District Court
for the Eastern District of Louisiana

––––––––––––––––––––––––

Before JOLLY, SMITH, and EMILIO M. GARZA,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The six named plaintiffs, all workers who formerly performed services for Mobil Corporation while on the payroll of third-party companies, filed this class action complaint seeking retroactive employment benefits from Exxon-Mobil Corporation and other defendants (hereinafter collectively "Mobil"), after the merger of Mobil Corporation and Exxon Corporation, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.* The

district court granted summary judgment for Mobil. Finding no error, we affirm.

I.

Like many companies, Mobil seeks to attract and reward capable employees by offering a variety of health, vacation, and other benefits. These benefits are expensive, however, and in an effort to reduce costs, Mobil began, in the early 1980's, to hire some of its employees through third-party payroll companies.

Employees hired in that fashion performed services similar or identical to those of other Mobil employees while on Mobil's premises

2

and under its supervision. They often worked side-by-side with other Mobil employees, and the services they provided were not highly specialized or individualized. They were not, however, on Mobil's payroll. This appeal presents the question whether such employees—specifically, the six named plaintiffs and the putative class on behalf of which they are suing—are eligible to collect benefits under the governing Mobil benefit plans.

Plaintiff John MacLachlan provided services for Mobil but was not on its payroll. Rather, during the eleven years he worked as an electronics technician for Mobil, he was directly employed and paid by two other companies: Consolidated Technical Services, Inc. ("CTS"), between 1987 and 1989; and Universal Technical Services, Inc. ("UTS"), from 1989 to 1999. MacLachlan's contract with CTS specified that he was to report for work at the job site of Mobil Oil Exploration & Producing Southeast, Inc. His involvement with Mobil ended when he was terminated by UTS without cause on February 4, 1999. He was eligible for employment benefits offered by CTS and UTS.

Similarly, the other named plaintiffs performed services for Mobil while under the direct employ of a third party. James Brown spent a decade as a mechanic for Mobil Aviation in Morgan City, Louisiana, but was paid by three different firms: Lee Services from 1989 to 1990; Jet Professionals from 1990 to 1992; and Excalibur from 1992 to 1999. Stephen Manley worked as a dispatcher and flight controller for Mobil Aviation from 1983 to 1999, during which time he was paid by Jet Professionals, from 1983 to 1986; Lee Services, from 1986 to 1994; and Excalibur, from 1994 to 1999. Alaina Spurlock was a clerical support staffer for Mobil Aviation, first while on the payroll of Lee Services from 1988 to 1994; then while on the payroll of Excalibur from 1994 to 1999. Bernd Stahr was a computer operator for Mobil in New Orleans from 1986 to 1996, spending the duration of that period on the payroll of Software & Scanning Service. Michael Zainotz was hired to be a computer systems administrator for Mobil's New Orleans office and worked in that capacity while on the payroll of Computerized Process from 1986 through 1999.

The putative class also is comprised of former Mobil workers who were on the payroll of third parties. As defined by the plaintiffs, the class consists of "all persons, past, present and future, employed in or at Defendant Mobil's facilities in the United States who perform(ed) personal services for Mobil and who are not, or were not, classified as regular employees of Mobil, but instead are or were classified as independent contractors or employees of third-party agencies for . . . one year."

Under the relevant Mobil plans, eligibility is restricted to "regular employees," but there are two definitions of that term in the record. First, as used in the retirement plan that was in effect at the time MacLachlan began working for Mobil, a "regular employee" is "an individual . . . who is employed by an employer corporation for work . . . for a regular period of at least 1,000 hours of employment per calendar year." An "employer corporation," as used in the plan, is "Mobil Corporation and each subsidiary participating in the Plan." The definitions in this plan make no mention of payroll status as a defining criteria, nor of an exclusion of non-payroll employees from the plan.[1]

_____

[1] Although plaintiffs base their claims for ben-
(continued...)

3

The second definition comes from a 1994 amendment to the retirement plan that specifically excludes employees of third parties and independent contractors. That plan provides: "An individual who performs services for an Employer under an agreement . . . pursuant to which such individual is treated as an independent contractor . . . shall not be a Regular Employee irrespective of whether he is treated as an employee of an Employer under Common-law employment principles . . . ."

All the relevant plans also include language vesting the administrator with the discretion to interpret the plans and to determine whether claimants are eligible for benefits. Under the retirement plan, a designated plan administrator is vested with the "discretion and final authority to determine eligibility . . . and to reach a final determination." Similarly, for the severance plan, the administrator "may interpret the plan . . . and make all other determinations necessary." And, under the savings plan, "the administrative fiduciary shall have all power and discretion necessary . . . to carry out their duties."

## II.

In March 1999, following his termination by Mobil, MacLachlan sent a letter to Mobil's employee benefits administrators formally requesting retroactive employment benefits.[2] He made the request on the ground that he was a "common law employee" of Mobil, a term that he argued should be read to fit within the plan's definition of "regular employee."

Exxon and Mobil merged in December 1999, some ten months after MacLachlan lost his job with UTS and nine months after he contacted Mobil about his eligibility for benefits. It was not until after the merger that Thomas Harrison, an assistant plan administrator with the delegated authority to decide claims, first took action on MacLachlan's petition.

Before the merger, Harrison was an Exxon employee and had not previously reviewed a claim for benefits under the Mobil plans. To make his decision, he reviewed the terms of the Mobil plans described above as well as MacLachlan's employment history with Mobil and CTS/UTS. Harrison also discussed the history of the plan's administration with Doug Davies, an ExxonMobil attorney who worked in Mobil's benefits division before the merger.

Davies informed Harrison that there was no record of Mobil's paying benefits to similarly situated third-party contractors. Davies also stated his belief that MacLachlan was the first contractor to file a claim seeking benefits. Harrison's investigation revealed that Mobil historically had mailed information about benefits only to payroll employees. On the basis of this record, Harrison concluded that contractors such as MacLachlan are outside the plan's definition of "regular employees" and thus are ineligible for benefits.

---

(...continued)
efits on several different plans, all the claims arise under plans that limit participation to "regular employees."

[2] MacLachlan's co-plaintiffs did not first pursue their claims through Mobil's administrative process. The district court excused this failure on the ground that it would have been futile for them to do so. As a consequence, however, the administrative record refers only to actions taken with respect to MacLachlan's claims.

[2](...continued)
istrative record refers only to actions taken with respect to MacLachlan's claims.

In March 2000, Harrison sent a letter to MacLachlan's attorney, formally denying benefits. Harrison explained that Mobil was denying MacLachlan's claims because MacLachlan had been employed by CTS/UTS and had not been on the Mobil payroll. Moreover, as Harrison stated, even if MacLachlan had been a common-law employee for tax purposes, "Mobil has consistently limited benefits to persons in a formal employment relationship with a participating employer-corporation."[3]

Harrison also made specific findings with respect to the different Mobil plans. MacLachlan was ineligible for the Retirement and Savings Plan, Harrison found, not only because MacLachlan was not on the payroll, but also because the terms of the plan exclude any person "retained by an employer-corporation under written contract on a consulting basis" or "employed by an employer corporation under a written contract where the terms of such written contract exclude participation in the Plan." Harrison concluded that a provision in MacLachlan's contract with CTS was intended to have this effect, because it stated that MacLachlan was "solely" an employee of CTS.

Harrison also declared that MacLachlan was not entitled to participate in the Severance Plan, because that plan applied only to employees terminated on, or within two years after, the date on which a change in control of Mobil occurs. Here, the merger between Exxon and Mobil did not occur until after MacLachlan had been terminated. Accordingly, Harrison concluded, MacLachlan would have

been unable to receive benefits under that plan, even if he had been a Mobil employee at the time of his termination.

MacLachlan and his co-plaintiffs then sued for retroactive employment benefits under ERISA § 502 (a)(1)(B); claims for breach of fiduciary duty under ERISA §§ 102, 202, 402 and 404; a claim for discrimination under ERISA § 510; and Louisiana state law claims. The plaintiffs maintained, as had MacLachlan in the administrative proceedings, that they are common-law employees, eligible for benefits under the Mobil plans.[4] The district court dismissed the state claims, the breach of fiduciary duty claims, and the discrimination claim, and plaintiffs did not appeal. The case proceeded on the § 502(a)(1)(B) claim for benefits until the district court granted Mobil's motion for summary judgment.

III.

We review a summary judgment *de novo*, applying the same standards as did the district court. *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003). Summary judgment should be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; FED. R. CIV. P. 56(c). In determining whether there is a genuine issue of material fact, we review the evidence and the inferences to be drawn therefrom in the light most favorable to the non-moving party. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001).

Plaintiffs argue that the district court

---

[3] At MacLachlan's request, Harrison's decision constituted both the original decision and appeal of MacLachlan's claims, and it exhausted MacLachlan's administrative recourse.

[4] Mobil concedes, for purposes of summary judgment only, that plaintiffs are common law employees.

applied the incorrect standard of review. This is a question of law that we review *de novo*. *Chevron Chem. Co. v. Oil, Chem. & Atomic Workers Local Union 4-447*, 47 F.3d 139, 142 (5th Cir. 1995).

ERISA authorizes the district court to review a denial of a claim for benefits, *see* 29 U.S.C. § 1132(a)(1)(B), but the statute provides no guidance on the appropriate standard of review for the courts. *Vega v. Nat'l Life Ins. Serv. Co.*, 188 F.3d 287, 295 (5th Cir. 1999) (en banc). Where a plan administrator has been vested with the discretionary authority to interpret a benefit plan, a district court reviews the administrator's interpretations only for abuse of discretion.[5] "[O]ur review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end." *Vega*, 188 F.3d at 297.

Where, however, an administrator's decision is tainted by a conflict of interest, the court employs a "sliding scale" to evaluating whether there was an abuse of discretion. *Id.* This approach does not mark a change in the applicable standard, but only requires the court to reduce the amount of deference it provides to an administrator's decision.[6]

The degree to which a court must abrogate its deference to the administrator depends on the extent to which the challenging party has succeeded in substantiating its claim that there is a conflict. "The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be." *Id.* Where, however, only "a minimal basis for a conflict is established, we review the decision with 'only a modicum less deference than we otherwise would.'" *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 343 (5th Cir. 2002) (quoting *Vega*, 188 F.3d at 301).

Plaintiffs concede that the administrator has the discretion and final authority to determine eligibility for benefits and that the abuse of discretion standard applies.[7] Plaintiffs nonetheless maintain that because of an apparent conflict of interest, the district court did not sufficiently apply "closer judicial scrutiny" to the administrator's decision, thus failing to apply the sliding scale standard correctly.

This assertion does not merit reversal. Even if, *arguendo*, there were a conflict of interest,[8] the district court recognized it and

---

[5] *Firestone Tire & Rubber Co v. Bruch*, 489 U.S. 101, 115 (1989). *See also Vega*, 188 F.3d at 295 (stating that "when an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion.").

[6] *Vega*, 188 F.3d at 299; *see also Bratton v. Nat'l Union Fire Ins. Co.*, 215 F.3d 516, 521 n.4
(continued...)

[6](...continued)
(5th Cir. 2000) ("Under this 'sliding scale' standard, the court applies the abuse of discretion standard, giving less deference to the administrator in proportion to the administrator's apparent conflict.").

[7] In the district court, plaintiffs urged *de novo* review as a result of the conflict of interest. The court correctly rejected this standard in favor of the abuse of discretion standard.

[8] The district court assumed there is a conflict of interest because Mobil interprets and adminis-
(continued...)

applied the appropriate standard of review. Plaintiffs' claim is contradicted by two statements the district court made in its summary judgment order. First, it announced the above rule from *Vega* and acknowledged that an apparent conflict may exist because "ExxonMobil administers its own plan" (citing *Vega*, 188 F.3d at 296-97). The court then correctly stated that this is a factor to be considered in its assessment of whether there

was an abuse of discretion.

Second, the court addressed a more specific allegation of a conflict of interest and concluded that it did not require any lessening of the deference owed to the administrator:

> MacLachlan argues that there is a conflict of interest because the plan administrator relied on the advice of Davies, Exxon Mobil's benefits counsel, in reaching his conclusion. However, he has not presented evidence to show that the plan administrator was in fact influenced by such conflict . . . . Davies stated that he certainly advised the plan administrator, but the decision and interpretation was that of the plan administrator.

(Internal citations omitted.)

Plaintiffs argue that the district court erred in requiring evidence that the conflict had an effect before it would apply the sliding scale. It is apparent from the court's opinion, however, that it did abrogate its deference in consideration of the first claim of a conflict of interest, and only refused to slide *further* down the scale on the basis of a second, unsubstantiated claim that the administrator was conflicted.

Unlike the inherent conflict that the court acknowledged might exist merely because Harrison is a paid employee of Exxon Mobil, there was no evidence that the administrator's decision could have been improperly influenced by Harrison's decision to ask Davies—a veteran Mobil employee who was familiar with the plans in question—for information on historical interpretations of the plan. It was not error to require proof on this point, because the court is required to lessen

---

[8](...continued) ters its own plan, leaving open the possibility that it would limit claims to reduce its liability. The court need not have made this assumption. The mere fact that benefit claims are decided by a paid human resources administrator who works for the defendant corporation does not, without more, suffice to create an inherent conflict of interest. Were that enough, there would be a near-presumption of a conflict of interest in every case in which an employer both offers a plan and pays someone to administer it, making a full application of the abuse of discretion standard the exception, not the rule.

*Vega* did not profess to create such a presumption, and we do not read it to have created one for cases of this sort. Rather, this court's decisions, following *Vega*, that have found an apparent conflict of interest are ones in which a claim was denied by an insurance company that did not employ the claimant, but instead was contractually obligated to make payments under the employer's plan. *See, e.g., Vega*, 188 F.3d at 289; *Gooden v. Provident Life & Acc. Ins. Co.*, 250 F.3d 329, 333 (5th Cir. 2001); *Lain*, 279 F.3d at 343.

This is a significant distinction, because corporations that pay generous levels of benefits to their workers do so for self-interested reasons: Such benefits are one part of the total package of compensation that employers use to attract and retain capable workers. It is therefore less than patently obvious that employers would systematically benefit from a denial of meritorious claims.

its deference only in proportion to the amount of conflict demonstrated by the challenging party.[9] Accordingly, the district court correctly applied the sliding scale standard.

Next, plaintiffs challenge the refusal to give evidentiary weight to two internal legal memoranda. Plaintiffs contend that these documents concede the eligibility of third party contractors for benefits under the Mobil plan. Plaintiffs do not characterize this claim as a challenge to the district court's factual determinations, a claim we would review for clear error under FED R. CIV. P. 52(a). Rather, they couch the issue as a question of law: that the district court failed to consider evidence, violating a standard of review announced in *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 645 (5th Cir.), *clarified*, 979 F.2d 1013 (5th Cir. 1992).

This contention is squarely contradicted by the record. In its order denying plaintiffs' rule 59(e) motion to amend, the district court stated: "Contrary to the plaintiffs' contention, the court considered *inter alia* the memoranda of the general counsel in reviewing the plan administrator's decision, and determined that documents do not provide evidentiary support for the plaintiffs' arguments." *Wilbur* does not require the court to give credence to every piece of evidence that comes before it. Rather, in *Wilbur*, 974 F.2d at 645, we merely stated that we were "unable to perform our coordinate role of reviewing the decision of the district court because we cannot tell whether the court properly evaluated all of the

potentially relevant evidence." That is not the case here, because the court openly stated that it considered the evidence and found it to be lacking in probative value.[10]

Even if plaintiffs had challenged the district court's weighing of the evidence, we would not have found the decision to be clearly erroneous, because the documents do not support the reading plaintiffs give them. The first memorandum, from F.K. Joiner of the Office of General Counsel, merely asserts one lawyer's "concern[] that *if* a Mobil independent contractor were deemed an employee for tax reasons, that the employee *would then seek* to obtain the other benefits of employment" (emphasis added). The second memorandum, from W.C. Whittemore of the same office, similarly recognizes that independent contractors might one day seek to claim Mobil benefits, and suggests strategies to "reduce or eliminate your exposure." These documents by no means concede that the appellants were eligible for benefits.

Plaintiffs' next challenge goes to the merits of the district court's determination that the administrator did not abuse his discretion. In reviewing a plan for abuse of discretion, the district court first must determine whether the administrator's interpretation is legally correct; if it is not, the court must decide whether the decision was an abuse of discretion. *Abraham v. Exxon Corp.*, 85 F.3d 1126, 1131 (5th Cir. 1996); *Pickrom v. Belger Cartage Serv.*, 57

---

[9] *Vega*, 188 F.3d at 297 ("The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be."); *see also Lain*, 279 F.3d at 343; *Bratton*, 215 F.3d at 521 n.4.

[10] Mobil contends that the memoranda are privileged and should not have been considered by the district court at all. That issue, however, was the subject of an earlier ruling. Mobil failed to cross-appeal that order, so we lack jurisdiction to consider their challenge to it. *Torres v. Oakland Scavenger Co.*, 487 U.S. 312 (1988).

F.3d 468, 471 (5th Cir. 1995).

For the first part of the inquiry, the courts assess three factors to determine whether the interpretation is legally correct: (1) whether the administrator has given the plan a uniform construction; (2) whether the interpretation is consistent with a fair reading of the plan; and (3) any unanticipated costs resulting from different interpretations of the plan. *Wildbur*, 974 F.2d at 638. In some cases, however, the court may skip this first part of the inquiry if it can determine that the decision was not an abuse of discretion. *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1307 n.3 (5th Cir. 1994). The district court opted to follow that path, and determined that Harrison's interpretation of the plan was not an abuse of discretion.

That conclusion is amply supported by the record. Harrison conducted a thorough investigation of the plan and the history of its administration. He determined that the term "regular employee" was meant to refer to employees on the payroll of Mobil or a participating employer corporation, and that no one had been paid benefits under the plan without first being on the Mobil payroll. The history of the plan's administration therefore supports the finding that this interpretation was not an abuse of discretion.

Harrison's analysis also finds support in the contract between MacLachlan and CTS. As the district court noted:

MacLachlan entered a written contract with CTS/UTS by which he was included on CTS/UTS's payroll, was eligible to participate in the company's group benefits plans after 30 days of service, and could not accept a position with Mobil within 30 days of termination without the written consent of CTS/UTS . . . .

It is entirely reasonable for an administrator to conclude that a person who performs services for Mobil under such terms is not a "regular" employee of the Mobil corporation.

Although the district court did not refer to it, Harrison listed an additional basis for his conclusion that MacLachlan was not an employee of Mobil. In denying MacLachlan's claims, Harrison pointed out that the contract between CTS and Mobil had a provision that "all persons engaged in the performance of said work shall be solely the servants or employees of Contractor." Plaintiffs contend this is irrelevant, because MacLachlan cannot be bound by a contract to which he was not a party.

To the contrary, the evidence is relevant, because it is probative of Mobil's intent in hiring third party contractors. The fact that Mobil hired MacLachlan pursuant to a contract that provided he was solely the employee of CTS is probative of the fact that he was not hired as a "regular employee" of Mobil, and it supports the administrator's interpretation.

To be sure, plaintiffs' reading of the Mobil plan is at least plausible in that before the 1994 amendment, the plan did not specifically exclude common law employees. But the plan does not explicitly include such employees, either. The remedy for such an ambiguity in a plan's language is not the compelled inclusion of all employees who arguably fit within its scope, but rather, the exercise of interpretive discretion by a duly empowered administrator. Harrison's decision that third-party contractors are not included in the plan was not an abuse of that discretion.

Not content to argue under existing law, plaintiffs, citing *EEOC v. Sidley Austin Brown & Wood*, 315 F.3d 696 (7th Cir. 2002), and *Jenkins v. S. Farm Bureau Cas.*, 307 F.3d 741 (8th Cir. 2002), assert that "emerging judicial doctrine" supports their interpretation of the plan. The issue in *Sidley* was whether certain equity partners of a law firm were "employees" for purposes of the Age Discrimination in Employment Act of 1967 ("ADEA"). *Sidley Austin Brown & Wood*, 315 F.3d at 699. *Jenkins*, 307 F.3d at 741, similarly addresses whether an insurance manager was an employee for purposes of the ADEA.

Whether these cases are the vanguard of an emerging judicial doctrine is a matter for the legal academy; they do not help us decide the appeal now before us: whether, on the facts of *this* case, the administrator abused his discretion. ERISA does not require Mobil to define its benefits plans in such a way as to provide coverage for all employees, irrespective of whether they are protected by the ADEA. To the contrary, it is well established that an employee may be a common law employee for some purposes, yet not entitled to benefits under a benefit plan. *Abraham*, 85 F.3d at 1130.

## IV.

As an alternative theory, Mobil argued before the district court, and again before this court, that plaintiffs' claims are barred by the statute of limitations. If not, Mobil contends, they should be barred by the equitable doctrine of laches.

We do not address the merits of these arguments, because they do not affect the result we reach today.

AFFIRMED.

10