**Kim B. SCHULTZ Plaintiff**

*v.*

**The PROGRESSIVE HEALTH, LIFE, AND DISABILITY BENEFITS PLAN, et al. Defendants**

No. 1:04CV719.

United States District Court, S.D. Mississippi, Southern Division.

July 21, 2005.

Roland F. Samson, III, Gulfport, MS, Shawn S. Shurden, Jackson, MS, for Plaintiff.

Roy H. Liddell and Robert J. Barefield, Jr., Jackson, MS, for Aetna Life Insurance Company.

F. Hall Bailey, Jackson, MS, for Defendants Progressive Health Life and Disability Benefits Plan, the Progressive Casualty Insurance Company and the Progressive Corporation.

## MEMORANDUM OPINION AND ORDER

GUIROLA, District Judge.

THE MATTERS BEFORE THE COURT are 1) Plaintiff's Motion for Partial Judgment on the Pleadings [41], filed under seal and construed by the Court as a Motion for Summary Judgment as to Plaintiff's claims against Defendant Aetna Life Insurance Company ("Aetna") under FED. R. CIV. P. 56 and 2) Aetna's Cross–Motion for Summary Judgment [42], also filed under seal.[1] The parties have filed responses and rebuttals to each Motion. After careful consideration of the submissions and the relevant law, it is the Court's opinion that Aetna has shown that it is entitled to summary judgment. Therefore, Aetna's Motion will be granted and Plaintiff's motion denied.

### DISCUSSION

*FACTS:*

Plaintiff Kim Schultz ("Schultz") was employed by Defendant The Progressive Casualty Insurance Company ("Progressive") as an insurance adjuster from 1990 to until she became disabled by fibromyalgia in 1999. Her disability absence beginning December 17, 1999 was certified under the provisions of Progressive's Managed Disability plan. Schultz was eli-

---

1. These pleadings were filed by the parties under seal pursuant to Rule 8.1 of the UNI- FORM LOCAL RULES.

gible for and received benefits under that plan for 90 days. Once 90 days were exceeded, Schultz's monthly benefits were paid under the terms of Progressive's Long Term Disability Benefits Plan (the "Plan") by Aetna, as claim administrator of the Plan.

Schultz received the benefits during the first 24 months of coverage under the Plan because Aetna determined that she was unable to perform the material duties of her own occupation. Aetna based its decision on a Functional Capacity Examination ("FCE") performed by HealthSouth in Gulfport and the Independent Medical Examination ("IME") of Dr. John C. Huntwork. Dr. Huntwork opined that even though the FCE showed her capable of full-time light work, Schultz actually had additional limitations because of her fibromyalgia which did not manifest themselves during the FCE. (AR–0022).[2] Dr. Huntwork believed that Schultz was disabled, although he also stated that he was "not an occupational expert, and it might well be that an occupational expert could find some employable work relate [sic] position given these limitations." (AR–0010).

After 24 months had passed, Schultz was required to show that she was unable to work at any reasonable occupation, rather than just her own occupation, in order to continue receiving benefits under the Plan. (AR–0307). It is when this higher standard went into effect beginning March 16, 2002 that Aetna required Schultz to complete a Work History and Education Questionnaire and have her physician fill out the Attending Physician's Statement. (AR–0039). Aetna received the completed Attending Physician's Statement from Dr. Fortier–Bensen on April 4, 2002. (AR–0247). The nurse reviewing the Statement wrote that where asked for Schultz's work capacity and limitations, Dr. Bensen stated "defer to FCE/psychiatrist," referring to the 2000 FCE performed by HealthSouth in Gulfport. (AR–0247). Another Attending Physician's Statement was completed by Dr. Bensen on September 30, 2002. Again, where asked for Schultz's capabilities and limitations, Dr. Bensen referred Aetna to the 2000 FCE and attached it to his Statement. (AR–0044, AR–0244). Because the 2000 FCE concluded that Schultz could perform light work duties, Aetna determined that Schultz could perform the duties of her previous occupation and also had skills transferable to a variety of sedentary occupations from her previous work as an insurance adjuster. *Id.* Schultz provided no other information about her medical condition. (AR–0047). Aetna therefore terminated Schultz's benefits. (AR–0045–48). Schultz appealed Aetna's decision, arguing that it should have also considered Dr. Huntwork's 2000 opinion that Schultz's ability to perform light work as shown by the FCE was limited in ways "not related to a one-time musculoskeletal exam," and that "the findings of the [FCE] would not be definitive in a case such as this." (AR–0053). After sending two letters to Schultz requesting that she submit any additional clinical information she wanted Aetna to review, and receiving no additional information, Aetna denied this appeal. Aetna noted that Schultz's attending physician, Dr. Bensen, had incorporated the 2000 FCE into his statement of Schultz's condition, and the 2000 FCE found her capable of full-time work in her own occupation. (AR–0055–56).

Through her counsel, Schultz requested that Aetna conduct another review of her claim and allow her to submit additional information. Although under no obligation to do so, Aetna agreed. (AR–0059). After almost two months had elapsed since the time the parties agreed to this additional

---

**2.** "AR" refers to the Administrative Record.

appeal, Aetna notified Schultz's counsel that because no additional information had been received, Aetna considered the matter closed. *Id.* Approximately two weeks later, Schultz submitted a letter from Dr. Bensen, a letter from her former supervisor, and the 2000 letter from Dr. Huntwork. (AR–0060). Aetna considered this additional information. (AR–0080). The first two letters did not contain the "quantifiable or observable evidence of a physical or psychological impairment" necessary to qualify for disability benefits. The third letter, written in 2000 by Dr. Huntwork, was "too dated to consider valid in our current review." *Id.* The decision to terminate Schultz's disability benefits was therefore affirmed. This suit followed.

*STANDARD OF REVIEW:*

▮ The Employee Retirement Income Security Act provides the district courts with the authority to review an administrator's denial of plan benefits. 29 U.S.C. § 1132(a)(1)(B). The district court reviews an administrator's factual determinations for an abuse of discretion when it has denied benefits under a plan. *Vercher v. Alexander & Alexander, Inc.,* 379 F.3d 222, 226 (5th Cir.2004) (citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)); *Pierre v. Connecticut Gen. Life Ins.,* 932 F.2d 1552 (5th Cir.1991), *cert. denied,* 502 U.S. 973, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991). In applying the abuse of discretion standard, the district court analyzes whether the administrator acted arbitrarily or capriciously. *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.,* 97 F.3d 822, 829 (5th Cir.1996). An administrator's decision is deemed arbitrary if it is made "without a rational connection between the known facts and the decision or between the found facts and the evidence." *Lain v. UNUM Life Ins. of Am.,* 279 F.3d 337, 342 (5th Cir.2002) (quoting *Bellaire Gen. Hosp.,* 97 F.3d at 828). An administrator's decision must be based on evi-

dence, even if disputable, that clearly supports the basis for denial, and there must be some concrete evidence in the record to support the administrator's decision. *Brown v. PFL Life Ins. Co.,* 111 Fed. Appx. 258, 259, 2004 WL 2278500, *1 (5th Cir.2004) (citing *Vega v. Nat'l Life Ins. Servs., Inc.,* 188 F.3d 287, 299 (5th Cir. 1999)).

▮ In reviewing the administrator's decision, the district court can only consider the evidence that was before the administrator. *Id.* As a result, the court's only inquiry is whether the "record adequately supports the administrator's decision." *Vega,* 188 F.3d at 298. Moreover, deference to the administrator's decision is required and the court may not substitute its judgment for that of the administrator. *Schadler v. Anthem Life Ins. Co.,* 147 F.3d 388, 395 (5th Cir.1998); *see also Ellis v. Liberty Life Assur. Co. of Boston,* 394 F.3d 262, 273 (5th Cir.2004)("We are aware of no law that requires a district court to rule in favor of an ERISA plaintiff merely because he has supported his claim with substantial evidence, or even with a preponderance. If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail."). However, in the event that the administrator is self-interested less deference is required. *Vega,* 188 F.3d at 298, 302. Where "the administrator has a financial incentive to deny the claim and often can find a reason to do so," there is a conflict of interest. *Id.* at 296. When such a case presents itself, the court is to apply a "sliding scale standard to the review of [an] administrator's decision." *Id.* at 298.

*PLAINTIFF'S CLAIMS:*

Against Defendant Aetna, Plaintiff seeks past benefits, restoration of benefits and to secure her right to future benefits pursu-

ant to 29 U.S.C. § 1132(a)(1)(B). She also seeks penalties for the plan administrator's purported refusal to supply requested information pursuant to 29 U.S.C. § 1132(c)(1). She alleges violation of 29 U.S.C. § 1133, which requires a full and fair review of a decision denying a claim for benefits, and in her briefing on these Motions she raises an argument that Aetna violated certain provisions of 29 C.F.R. § 2560.503–1.[3]

*THE LEGAL STANDARD:*

■ The Plaintiff contends that its Motion for Partial Judgment on the Pleadings under FED. R. CIV. P. 12(c) should not be converted to a Rule 56 Motion because all of the documents she relies upon have been attached and referred to in her Complaint, making those documents part of the pleadings for purposes of Rule 12(c). Aetna has submitted additional documents with its Response, arguing that consideration of the entire record is necessary for the Court to determine whether the record adequately supports Aetna's decision to deny benefits to the Plaintiff. In response, Plaintiff asserts that "where an ERISA fiduciary, like Aetna, ignores or fails to consider and credit a claimant's reliable and relevant evidence that is reasonably available, the Court needs not and should not review the entire record or engage in a sufficiency of the evidence determination." Plaintiff provides no support for this proposition, and the Court finds that it is contrary to the well-established standard for review under 29 U.S.C. § 1132(a)(1)(B). Accordingly, the Court finds that the submission and consideration of matters outside the pleadings requires that this Motion be treated as one

for summary judgment pursuant to Rule 56. Anticipating this possibility, Plaintiff has argued that she is also entitled to judgment under Rule 56. She therefore has had a "reasonable opportunity to present all material made pertinent to such motion by Rule 56." FED. R. CIV. P. 12(c).

*STANDARD FOR MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56:*

Rule 56 permits any party to a civil action to move for a summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. In effect, Rule 56(c) provides that as a matter of law, upon admitted or established facts, the moving party is entitled to prevail. A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant need not negate the non-movant's claims. Instead, movant need only show the absence of evidence to support a claim on issues to which the non-movant bears the ultimate burden of proof at trial. *Id.* at 323–24, 106 S.Ct. 2548. Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324–25, 106 S.Ct. 2548. The non-moving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v.*

---

**3.** Schultz also brings a state law claim of bad faith denial of benefits. ERISA's provisions "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA § 514(a), 29 U.S.C. § 1144(a). Therefore, to the extent

that Plaintiff attempts to bring state law claims against Aetna in regard to the employee benefit plan at issue here, those claims are preempted by ERISA. *McGowin v. ManPower Intern., Inc.* 363 F.3d 556, 559 (5th Cir. 2004).

*Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### WAS AETNA OPERATING UNDER A CONFLICT OF INTEREST?

 As noted above, when an ERISA administrator is operating under a conflict of interest, the court is to give less deference to the administrator's decision *Vega*, 188 F.3d at 299. Aetna discerns a conflict of interest claim in Plaintiff's assertion that "Plaintiff represented a continued financial liability to Aetna, with no need to accumulate goodwill from Progressive by supporting a former and disabled employee." Plaintiff does not explicitly make a claim the Aetna was operating under a conflict of interest, but if she had, the Court is not to "presum[e] that a conflict exists *ipso facto* merely because the plan fiduciary both insures the plan and administers it." *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 270 (5th Cir.2004) (citing *MacLachlan v. ExxonMobil Corp.*, 350 F.3d 472, 479 n. 8 (5th Cir.2003)). The ERISA plaintiff must come forward with evidence that a conflict exists. *Id.* The existence of a conflict is a factor to be considered in determining whether the administrator abused its discretion in denying a claim, and the greater the evidence of conflict on the part of the administrator, the less deferential the abuse of discretion standard will be. *Vega*, 188 F.3d at 297, 299. In this case, the Plaintiff's comment implying that Aetna may have been operating under a conflict of interest does not present the Court with sufficient reason to be less deferential in its analysis of Aetna's decision making.

### REVIEW OF THE CLAIM ADMINISTRATOR'S FACTUAL DETERMINATIONS:

 Plaintiff has two complaints about Aetna's review of her claim. First, she contends that Aetna improperly excluded or did not consider Dr. Huntwork's November 30, 2000 letter, in which he stated

that because of the nature of Plaintiff's impairment, "the findings of the functional capacity evaluation would not be definitive in a case such as this." (AR–0022). According to Plaintiff, exclusion of this opinion was improper because Aetna relied upon the April 2000 FCE in 2002, 2003 and 2004 without taking Dr. Huntwork's limitation of the conclusions of the FCE into consideration. Second, Plaintiff contends that Aetna improperly excluded or did not consider the opinion of Dr. Robert Fortier–Bensen, stated in a letter dated February 2, 2004, that Schultz had a "disabling problem." In that letter, Dr. Bensen requested that Aetna "reinstate her disability as we continue to find the source of her problems and work on the cause of her pain," and concluded that "the patient remains at this point totally disabled." (AR–0071–72). In Plaintiff's view, Aetna ignored the opinions of both Dr. Bensen and Dr. Huntwork that she was disabled and improperly relied on the 2000 FCE when it denied her second appeal of its decision to deny benefits in 2004.

In response, Aetna states that it did not ignore any of Plaintiff's evidence of disability, and that Plaintiff simply disagrees with the weight Aetna accorded the evidence in the Administrative Record. Aetna contends that its duties to the Plan required it to consider the FCE, which was an objective test demonstrating Plaintiff's abilities. Dr. Bensen referred to and incorporated the 2000 FCE into his 2002 Attending Physician's Statement, which would indicate that he agreed with the findings therein. Unlike Dr. Huntwork in 2000, Dr. Bensen in 2002 did not attempt to limit or otherwise make adjustments to the findings of the FCE. It seems reasonable for Aetna to have relied upon this evidence in its decision making. As Aetna stated to the Plaintiff in its letter denying her appeal:

we find no information in your file nor did you submit any documentation to

dispute the findings of the FCE and your capabilities of returning to work in any capacity. In fact, your own treating physician referred Aetna to the FCE results when questioning him about your limitations and restrictions.

(AR–0056). Whether Aetna should have accorded Dr. Huntwork's opinions more weight is not a determination which can properly be made by the Court. *Schadler v. Anthem Life Ins. Co.*, 147 F.3d at 395. There is substantial evidence in the record which supports Aetna's decision to deny benefits at the time of the first appeal, and the decision was not arbitrary and capricious.

It was during the second appeal that Plaintiff submitted Dr. Bensen's letter concluding that "the patient remains at this point totally disabled." (AR–0072). Aetna contends, and the Court agrees, that Aetna has no duty to credit such conclusory and unsubstantiated statements regarding disability. *Gooden v. Provident Life & Accident Ins. Co.*, 250 F.3d 329, 334 (5th Cir.2001)(letter from doctor stating that patient was disabled unaccompanied by medical evidence indicating that patient's condition changed since the last time doctor had seen patient.) The record adequately supports Aetna's decision to uphold its denial of benefits in the face of this letter. Furthermore, Aetna gave Schultz ample opportunity to provide evidence of her entitlement to disability benefits. The process spanned two years, and even though Schultz was not always diligent about pursuing her claim, there are multiple instances in the Record where Aetna encouraged Schultz to submit evidence she believed might be helpful to her claim. *See, e.g.,* AR–0156. This review was full and fair, and Aetna's decision was neither arbitrary nor capricious.

4. 29 C.F.R. § 2560.503–1(*o*) provides as follows:

*FAILURE TO PROVIDE DOCUMENTS:*

 Schultz has also made a claim for penalties which may be assessed under ERISA when a plan administrator "refuses to comply with a request for any information which such administrator is required ... to furnish to a participant or beneficiary." 29 U.S.C. § 1132(c)(1)(B). ERISA provides that a plan administrator who fails to provide such information "may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal." *Id.* at § 1132(c)(1). *Abraham v. Exxon Corp.* 85 F.3d 1126, 1132 (5th Cir.1996). Aetna argues that ERISA contains no provision imposing a similar duty upon a claim administrator. In the absence of any authority in support of this claim, no liability can be assessed to Aetna under 29 U.S.C. § 1132(c).

*REGULATORY VIOLATIONS:*

 The Plaintiff argues that Aetna failed to comply with the requirements of certain provisions within 29 C.F.R. § 2560.503–1 in reviewing her claim and notifying her of its decision. This argument was raised for the first time in Plaintiff's rebuttal brief in support of her motion for partial judgment on the pleadings and appears to be in support of her contention that Aetna's review was not full and fair, rather than a separate cause of action. In response to the Court's request for additional briefing on this issue, Aetna argues that these regulations were not in effect at the time Plaintiff's claim was filed, and therefore Aetna could not have violated them.

Section 2560.503–1(*o*) specifies that the section applies to "claims filed" on or after January 1, 2002.[4] As Plaintiff's claim was

(*o*) Applicability dates.

filed well before 2002, she points to a district court decision in which "claims filed" was interpreted to mean "appeals filed." *Oman v. Intel Corp. Long Term Disability Benefit Plan,* 2004 WL 2384965 at *4 (D.Or. Oct. 21, 2004). However, in the Court's opinion, the plain language of the regulation does not allow such an interpretation. "In interpreting a statute or regulation, we first look to the statute or regulation's plain language." *Lara v. Cinemark USA, Inc.,* 207 F.3d 783, 787 (5th Cir.2000) (citation omitted). The language here is not ambiguous. "Claims filed" should not be construed to mean "appeals filed" or, as Plaintiff also argues, "review to continue benefits initiated." The Fifth Circuit has cautioned courts that

> [t]he presence or lack of ambiguity in a regulation should be determined without reference to proposed interpretations; otherwise, a regulation will be considered "ambiguous" merely because its authors did not have the forethought expressly to contradict any creative contortion that may later be constructed to expand or prune its scope.

*Moore v. Hannon Food Service, Inc.* 317 F.3d 489, 497 (5th Cir.2003). Therefore, the Court finds 29 C.F.R. § 2560.503–1(*o*) to be unambiguous. The provisions of 29 C.F.R. § 2560.503–1 apply only to those claims filed on or after January 1, 2002. Because Plaintiff's claim was filed before January 1, 2002, the provisions of 29 C.F.R. § 2560.503–1 do not apply in this case.

## CONCLUSION

After carefully reviewing the arguments and the summary judgment evidence provided by the parties in support of their respective motions, it is the opinion of the Court that the Plaintiff has failed to show that there is a question of material fact for the jury as to each of Plaintiff's claims against Aetna.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Plaintiff's Motion for Partial Judgment on the Pleadings [41], construed as a Motion for Summary Judgment pursuant to FED. R. CIV. P. 56, is **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that Defendant Aetna's Cross–Motion for Summary Judgment [42] is **GRANTED**. Plaintiff's claims against Defendant Aetna Life Insurance Company are **DISMISSED**.

(1) Except as provided in paragraph (*o*)(2) of this section, this section shall apply to claims filed under a plan on or after January 1, 2002. (2) This section shall apply to claims filed under a group health plan on or after the first day of the first plan year beginning on or after July 1, 2002, but in no event later than January 1, 2003.