United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 21, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 05-11445
_____

NINAN CHACKO,

Plaintiff-Appellant,

versus

SABRE INC; SABRE INC SEVERANCE PLAN; BENEFITS &
EQUITY OF SABRE INC, As Plan Administrator; BENEFITS
ADMINISTRATION COMMITTEE OF SABRE INC APPEAL
COMMITTEE; BENEFITS ADMINISTRATION COMMITTEE OF
SABRE INC; MICHAEL HAEFNER, As Member of the Benefit
Administration Committee of Sabre Inc; JOSEPH V LIBONATI, As
Chairman-Appeals Committee of Sabre Inc; MANAGER
CORPORATE EMPLOYEE RELATIONS OF SABRE INC, As Plan
Administrator; NAMED FIDUCIARY OF SABRE
INCORPORATED SEVERANCE POLICY, For Senior Vice
Presidents; SABRE INC EXECUTIVE SEVERANCE POLICY, For
Senior Vice Presidents and Senior Vice President of Compensation;
DAVID SCHWARTE, As Member of the Benefit Administration
Committee of Sabre Inc; ERIN SPECK, As Member of the Benefit
Administration Committee of Sabre Inc,

Defendants-Appellees.

_____

Appeal from the United States District Court
For the Northern District of Texas

_____

Before JONES, Chief Judge and DAVIS and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Ninan Chacko ("Chacko") appeals the district court's grant of summary judgment in favor of several defendants, including his former employer Sabre, Inc. ("Sabre"), the Sabre, Inc. Severance Plan, and the administrator of the Sabre, Inc. Severance Plan (the "Administrator") (collectively, "Appellees"), on his claim for wrongful denial of severance benefits under § 502(a)(1)(B) of the Employment Retirement Income and Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B). We affirm.

I

Chacko commenced his employment with Sabre in 1990. By 2003, Chacko, then a senior vice president of one of Sabre's divisions, had become concerned about his prospects of advancement within the company. Thus, when he learned in early September 2003 that Sabre intended to implement a company-wide layoff, he approached Eric Speck ("Speck"), Sabre's Chief Marketing Officer. Chacko informed Speck that he wanted assurances from Sabre's CEO that he was on track to becoming a company officer; if not, Chacko desired a severance package from Sabre in the upcoming layoff. On September 29, 2003, Speck informed Chacko that the CEO was not enthusiastic about Chacko's career path at Sabre. Sabre had therefore decided to offer Chacko a severance package. Speck told Chacko that Sabre's human resources department would contact Chacko with the details of the severance package. Chacko and Speck planned for Chacko's last day of work to be October 13, 2003 and agreed to work out the details and announcement of his departure.[1]

_____

[1] Shortly after his conversation with Speck, Chacko accepted employment with one of Sabre's competitors.

-2-

At the time of Chacko's meeting with Speck on September 29, 2003, Sabre had in effect the Sabre, Inc. Severance Plan (the "General Severance Plan" or "GSP"), which set forth the terms and conditions upon which Sabre would provide severance benefits to involuntarily terminated employees. Specifically, the GSP provided for up to twenty-six weeks of salary benefits payable in a lump sum, conditioned upon the execution by the terminated employee of an "Agreement and General Release ('AGR') in a form determined by Sabre that release[d] all causes of action and claims against Sabre and related parties." When Chacko received a Separation Summary outlining the terms of his severance package the following day, however, it stated that he would be offered thirty-two weeks of salary benefits payable over an eight-month period, conditioned upon his signing an AGR containing non-compete and non-solicitation provisions (the "Expanded AGR").[2] Believing the non-compete and periodic payment provisions to be contrary to the GSP, Chacko refused to sign the Expanded AGR. Instead, over the course of the following week, he attempted to negotiate with Sabre over the terms and conditions of his severance package.

On October 7, 2003, Sabre's Benefits Administration Committee (the "Committee") adopted a resolution amending the GSP to grant expressly to Sabre the discretion (1) to include non-compete and non-solicitation provisions in the terminated employee's AGR; and (2) to pay severance benefits in periodic installments (the "Amendment").[3] The resolution provided that the Amendment was

---

[2] These benefits were the equivalent of benefits contemplated by a severance plan that became effective on October 1, 2003, entitled the "Sabre, Inc. Executive Severance Policy for Senior Vice Presidents" (the "Executive Plan"). Chacko has not asserted a claim for benefits under the Executive Plan in this lawsuit.

[3] The GSP gave Sabre the right unilaterally to amend or terminate the GSP at any time:

Participants have no vested right to benefits under the severance plan. Sabre may amend or terminate the severance plan at any time. Amendment or termination may

-3-

effective immediately.

Chacko officially separated from Sabre on October 17, 2003.[4] On November 3, 2003, he filed a claim for severance benefits, in which he expressed a willingness to sign an AGR in the form contemplated by the pre-Amendment GSP and demanded payment of his severance benefits in a lump sum. On November 6, 2003, Sabre informed Chacko that the Administrator had denied his claim for benefits "based on the fact that the [GSP], as amended and in effect on Mr. Chacko's termination date of October 17, 2003 . . . specifically allows for the execution of an [AGR] containing a non-compete provision as a condition of eligibility for benefits, and further specifically provides for the payment of benefits in periodic installments." Chacko appealed, and an independent appeals committee (the "Appeals Committee") was appointed to review the Administrator's decision. The Appeals Committee denied Chacko's appeal on the grounds that he had no vested rights under the GSP in effect on September 29, 2003; the GSP expressly granted Sabre the right to terminate or amend the GSP at any time; the October 7, 2003 Amendment to the GSP was validly executed; Sabre had complied with ERISA's notice requirements regarding the Amendment; and Chacko was not eligible for benefits under the governing GSP ) ) the one in effect on October 17, 2003 ) ) because he refused

be prospective or retroactive in the discretion of the Company. Amendment or termination shall be by action of the Benefits Administration Committee . . . and shall be effective on the date specified therein.

Chacko does not contend that the Amendment was improperly adopted or otherwise challenge the validity of the Amendment. *Cf. Curtis-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S. Ct. 1223, 1228 (1995) (explaining that a claim that an employer amended its welfare plan to deprive an employee of welfare benefits "is not a cognizable complaint under ERISA" because employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans").

[4] Although Chacko was initially scheduled for termination on October 13, 2003, his termination date was subsequently modified by agreement of the parties to October 17, 2003.

to sign the Expanded AGR.

Chacko brought suit against Appellees, claiming, *inter alia*, that he was wrongfully denied severance benefits under the GSP in violation of ERISA § 502(a)(1)(B). The district court granted Appellees' motion for summary upon finding that the Administrator's denial of severance benefits was not an abuse of discretion. On appeal, Chacko argues that (1) Appellees are precluded from denying his claim for benefits because they engaged in "inequitable conduct"; and (2) the Administrator abused its discretion by applying an incorrect legal standard)) the Amendment)) to his claim for benefits. Appellees respond that Chacko's claim is, in essence, a challenge to the Administrator's determination that the Amendment applied to Chacko's claim for benefits because he was "terminated" on the date his employment with Sabre actually ended (October 17, 2003), rather than on the date Speck informed him that Sabre had decided to terminate his employment (September 29, 2003). Appellees argue that the district court correctly held that the Administrator made a factual determination that Chacko was terminated on October 17, 2003 and that this factual determination was not an abuse of discretion.

II

We review grants of summary judgment *de novo*, applying the same legal standard used by the district court. *MacLachlan v. ExxonMobil Corp.*, 350 F.3d 472, 478 (5th Cir. 2003). Summary judgment is proper when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

A

Chacko first contends that "inequitable conduct" on the part of Appellees)) namely, alleged breaches of their fiduciary duties)) precludes them from denying him severance benefits under the

-5-

GSP. More specifically, Chacko argues that Appellees "acted with a complete lack of integrity" by offering him a severance package under the Executive Plan one day before that plan became effective; that they failed to provide him with "full and complete material information" regarding the availability of severance benefits under the Executive Plan; that they breached a fiduciary duty of loyalty and engaged in self-dealing by conditioning his receipt of benefits upon the execution of a non-compete agreement; and that their decision to deny him benefits was not a "reasoned product of the exercise by [the GSP Administrator] of her fiduciary duty." Therefore, Chacko argues, the district court erred in granting summary judgment on his claim for benefits. In other words, Chacko contends that he is entitled to benefits under the GSP, regardless of whether he satisfies the terms of eligibility for those benefits, because Appellees allegedly breached their fiduciary duties.

Even if Chacko's allegations of "inequitable conduct" were supported by the summary judgment evidence, which they are not, Chacko's only claim on appeal is a claim for benefits under ERISA § 502(a)(1)(B).[5] Section 502(a)(1)(B) provides an ERISA plan participant or beneficiary with a cause of action "to recover benefits due to him *under the terms of his plan*, to enforce his rights *under the terms of the plan*, or to clarify his rights to future benefits *under the terms of the plan*." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). Chacko's argument) ) that he is entitled to benefits not because they are due to him under the terms of the GSP but rather because Appellees engaged in "inequitable conduct" and breached their fiduciary duties) ) is simply not cognizable under ERISA § 502(a)(1)(B).

---

[5] Although Chacko brought an unlawful interference with benefits claim under ERISA § 510, 29 U.S.C. § 1140, he does not appeal the district court's grant of summary judgment on that claim. Moreover, Chacko has never asserted an ERISA breach of fiduciary duty claim or an ERISA estoppel claim.

B

Chacko also challenges the Administrator's denial of benefits under the terms of the GSP. A plan administrator's benefit determinations involve two tasks: construing the terms of the plan and determining the facts underlying the benefit claim. Where the plan expressly confers discretion on the plan administrator to construe the plan's terms, the administrator's construction is reviewed for abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57 (1989); *Gosselink v. AT&T, Inc.*, 272 F.3d 722, 726 (5th Cir. 2001); *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999). Moreover, the administrator's factual determinations are reviewed for abuse of discretion, regardless of the administrator's ultimate authority to determine benefit eligibility. *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 213 (5th Cir. 1999); *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 226 (5th Cir. 2004).

Chacko does not dispute that the GSP vests the Administrator with discretionary authority to construe the terms of the GSP,[6] and, hence, that the abuse of discretion standard applies. Instead, he argues that the Administrator's decision is entitled to reduced deference because the Administrator faced a conflict of interest in deciding his claim, given that the Administrator was employed by Sabre, Chacko's severance benefits would have been paid by Sabre, and the conditioning of the receipt of severance benefits on Chacko's signing a non-compete agreement served the proprietary interests of

---

[6] Section 7 of the GSP, entitled "Plan Administrator's Discretion," states:

Final determination of all benefits will be made in accordance with the written terms of this severance plan. The Plan Administrator shall have the discretionary authority to determine all questions concerning an employee's eligibility for benefits and the amount of benefits payable (if any), to determine and resolve all questions (factual or otherwise) relating to the severance plan, and to interpret, in the Plan Administrator's sole discretion, any and all terms of the severance plan.

Sabre. The existence of a conflict of interest is a factor in the abuse of discretion inquiry. *Vega*, 188 F.3d at 297. When a conflict of interest is shown to exist, we apply a "sliding scale," giving less deference to the administrator's decision in proportion to the administrator's conflict. *See MacLachlan*, 350 F.3d at 478-79. Here, Chacko has demonstrated a "minimal basis for a conflict," as the fact that Sabre funds and administers its own plan leaves open the possibility that it would limit claims to reduce its liability. *See Vega*, 188 F.3d at 301. Chacko has not, however, presented evidence with respect to the degree of the conflict, and we therefore review the administrator's decision with only "a modicum less deference" than we otherwise would. *Id.*; *see also MacLachlan*, 350 F.3d at 479-80.

Chacko contends that the Administrator applied an incorrect legal standard))the October 7, 2003 Amendment to the GSP))to his claim for severance benefits. According to Chacko, the GSP, when properly interpreted, required that his claim for severance benefits be determined by reference to the version of the GSP in effect on September 29, 2003, when he first received notice of his termination. Chacko recognizes that the GSP does not define the term "termination" or explain when a "termination" occurs but contends that "applicable federal and Texas court decisions addressing the effective date of an involuntary termination of employment for legal purposes uniformly confirm that an involuntary termination of employment is effective when an employee is given notice of it."[7]

---

[7] In support of this contention, Chacko cites *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 134 (5th Cir. 1992) (holding that the limitations period for a suit for wrongful termination under a Texas Worker's Compensation retaliation statute commences "when the employee receives unequivocal notice of his termination or when a reasonable person would know of his termination"). As Appellees point out, however, *Thurman* does not hold that a "termination"occurs on the date the employer gives notice of termination, let alone that))in all contexts and for all purposes))a "termination" occurs on the date the employer gives notice of termination. Rather, *Thurman* simply holds that, for purposes of determining when a cause of action for wrongful discharge accrues, courts look to the date on which the employee knew or should have known of his termination. It does not

In response, Appellees contend that the determination that Chacko's termination occurred on October 17, 2003 constitutes a factual determination reviewable only for an abuse of discretion. Appellees argue that the administrative record amply supports the finding that Chacko was terminated on October 17, 2003, given that "he continued to provide services to, receive compensation from, and have employee access to Sabre for more than two weeks" after he was notified of his termination on September 29, 2003. Therefore, Appellees argue, there was no abuse of discretion. The district court agreed with Appellees and found that because Chacko had no rights under the GSP until he was terminated on October 17, 2003 and because the Amendment was validly adopted on October 7, 2003, the Amendment governed Chacko's claim for benefits.

Contrary to the contentions of both Chacko and Appellees, the question of when Chacko was "terminated" is an issue of plan interpretation. It is undisputed that Chacko received notice of his termination on September 29, 2003 and that he officially separated from Sabre on October 17, 2003. Therefore, there was no factual determination to be made by the Administrator in choosing between these two dates. To be sure, the Administrator did not expressly construe the term "termination," but inherent in the Administrator's finding that Chacko was terminated on October 17, 2003 was a determination that an employee is "terminated" for purposes of the GSP when he actually ceases his employment, not when he receives notice that his employment will end at some future date. Therefore, the issue before us is whether this interpretation of the GSP was an abuse of discretion.

In reviewing an administrator's plan interpretation for abuse of discretion, we must first determine whether the administrator's interpretation is legally correct; if so, the inquiry ends because

---

follow from this holding that, as a matter of law, a participant in an ERISA severance plan is entitled to benefits under the version of the plan in effect on the date he first learns that he is going to be terminated.

no abuse of discretion could have occurred. *Aboul-Fetouh v. Employee Benefits Comm.*, 245 F.3d 465, 472 (5th Cir. 2001). If, on the other hand, we determine that the administrator's interpretation is not legally correct, then we must proceed to determine whether the administrator's denial of benefits was an abuse of discretion. *Id.* In order to ascertain the legally correct interpretation of the GSP, we consider three factors: (1) whether the administrator has given the plan a uniform construction; (2) whether the interpretation is consistent with a fair reading of the plan; and (3) any unanticipated costs resulting from different interpretations of the plan. *MacLachlan*, 350 F.3d at 481. As there appears to be no evidence of record relevant to the first and third factors, we focus on whether the interpretation is consistent with a fair reading of the GSP. *See Vercher*, 379 F.3d at 228.

Under the GSP, both before and after the Amendment, Sabre agreed to pay severance benefits to employees "whose employment is involuntarily terminated by Sabre," subject to certain exceptions, including the signing of an AGR in a form determined by Sabre. The GSP provides that "[t]he amount of severance is determined by the employee's base salary on the date of termination." The GSP further provides that "[a]ll claims for benefits must be submitted in writing to the Plan Administrator . . . within 60 days of termination of employment." Finally, the GSP expressly states that "[p]articipants have no vested right to benefits under the severance plan." In determining that the Amendment applied to Chacko's claim because it was "in effect on his termination date of October 17, 2003," the Administrator construed the GSP to provide that an employee's "termination" occurs when he officially separates from Sabre.

The Administrator's understanding of the term "termination" is consistent with a fair reading of the GSP. "When interpreting plan provisions, we interpret the contract language in an ordinary and popular sense as would a person of average intelligence and experience, such that the language

is given its generally accepted meaning if there is one." *Keszenheimer v. Reliance Standard Life Ins. Co.*, 402 F.3d 504, 507 (5th Cir. 2005) (internal quotation marks and citations omitted). Although termination of employment is not defined in the GSP, the phrase, as it is ordinarily understood, means "[t]he complete severance of an employer-employee relationship." BLACK'S LAW DICTIONARY 1511 (8th ed. 2004). Because an employee may receive notice that his employment is being terminated well in advance of the date on which he ceases providing services to and receiving compensation from his employer, it follows that the employer-employee relationship may not be completely severed on the date the employee first learns of the termination. Moreover, to construe the GSP as providing an entitlement to severance benefits before an employee actually ceases providing services to and receiving compensation from Sabre would lead to the unexpected result that an employee could demand severance benefits while still receiving his regular pay. Therefore, we conclude that the Administrator correctly determined that, for purposes of the GSP, termination of employment occurs when the employee actually ceases providing services to and receiving compensation from Sabre. The Administrator's construction of the GSP is legally sound, and no abuse of discretion occurred.[8]

The Administrator correctly determined that the October 7, 2003 Amendment applied to Chacko's claim for severance benefits, and Chacko admittedly failed to satisfy the conditions for receiving severance benefits under the post-Amendment GSP. Accordingly, the district court did not err in upholding the Administrator's denial of severance benefits.

III

---

[8] Because we conclude that the Administrator correctly determined that Chacko was terminated after the October 7, 2003 Amendment to the GSP became effective, we do not reach Appellees' alternative argument that, as a matter of law, the controlling version of the GSP was the version in effect on the date of the benefits determination, November 6, 2003.

For the foregoing reasons, we affirm the district court's grant of summary judgment on Chacko's claim for severance benefits under ERISA § 502(a)(1)(B).

AFFIRMED.