United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 28, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 06-10511

_____

COOK CHILDREN'S MEDICAL CENTER

              Plaintiff - Counter Defendant - Appellant

   v.

THE NEW ENGLAND PPO PLAN OF GENERAL CONSOLIDATED MANAGEMENT INC;
DEBORAH HANSEN, Fiduciary of The New England PPO Medical Plan of
General Consolidated Management, Inc.

              Defendants - Counter Claimants - Appellees

NEW ENGLAND LIFE INSURANCE COMPANY

              Third Party Defendant - Appellee

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

Before KING, GARZA, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

Cook Children's Medical Center appeals the district court's grant of summary judgment and award of mediation costs in favor of the defendants. For the reasons that follow, we AFFIRM the district court's order granting summary judgment and VACATE the award of mediation fees as taxable costs under 28 U.S.C. § 1920.

-1-

## I. BACKGROUND

### A. Factual Background

David G. Miller ("Mr. Miller") began his employment with Creative Education Inc., a company affiliated with General Consolidated Management, Inc. ("General Consolidated"), in September 2000. General Consolidated has a welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, which provides medical and other benefits to its employees and their beneficiaries.

On January 16, 2002, Mr. Miller asked General Consolidated to add his son, David C. Miller ("David"), as a covered dependent under General Consolidated's ERISA plan, which at that time was insured through Aetna US Healthcare. David was born on November 29, 2001, with congenital heart defects and other disabilities.

In early 2002, General Consolidated decided to no longer fund its ERISA plan through Aetna US Healthcare. Effective April 1, 2002, General Consolidated replaced the Aetna Plan with a self-funded ERISA plan, under which New England Life Insurance Company ("New England") provided excess coverage and administrative services for the plan. The open enrollment period for the new plan, the New England PPO Medical Plan of General Consolidated Management, Inc. ("Plan"), began on March 1, 2002, and ended on March 31, 2002.

On March 2, 2002, Mr. Miller filled out a Benefit Plan

Enrollment/Change Form for the Plan and listed David as one of his dependents to be enrolled in the Plan. On March 31, 2002, Mr. Miller removed David from his Plan enrollment form by crossing through David's name and information. Underneath the line crossing through David's name and information is a handwritten note on the enrollment form stating "[t]ake off per [Mr. Miller]. [David] is on Medicaid. 3-31-02. Phoned Irene." In addition, Mr. Miller told Cathy Gunn of General Consolidated that David should not be enrolled in the Plan as one of his covered dependents. Mr. Miller took these actions during the open enrollment period and before the Plan's effective date. Pursuant to Mr. Miller's instructions, the Plan Administrator, Deborah Hansen ("Plan Administrator"), did not enroll David in the Plan.

Mr. Miller's decision not to enroll David in the Plan was based on conversations he and his wife, Amy Miller ("Mrs. Miller"), had with Medicaid and Social Security Administration representatives. These representatives allegedly told the Millers that David's medical care would be covered by Medicaid if Mr. Miller did not enroll David in the Plan.

David was covered by Medicaid in April 2002, and his Medicaid coverage continued until June 30, 2002. From April 9-22, 2002, David underwent medical treatment at Cook Children's Medical Center ("Cook"). When David was admitted for treatment, the Millers informed Cook that David was covered by Medicaid. In

addition, the Millers assigned to Cook any benefits to which David was entitled.[1]

Cook filed its claim for David's hospital bills with Medicaid. Medicaid paid Cook approximately $76,291.63 for David's medical treatment in April 2002.[2]

In June 2002, the Millers were notified that David's Medicaid coverage would expire on June 30, 2002, because the Social Security Administration had determined that as of June 30, David would no longer qualify for supplemental security income. Because David's Medicaid coverage was set to expire on June 30, Mr. Miller submitted a Benefit Plan Enrollment/Change Form on June 28, adding David to the Plan effective July 1, 2002. In a letter dated June 30, 2002, Mr. Miller stated:

> I wish to add [David] to my policy . . . effective 7/1/02. He was not enrolled during open enrollment because he was covered under Medicaid. I received a letter of denial from SSI Medicaid on June 11, 2002 stating he would no longer be eligible for coverage after 6/30/02.

The Plan enrolled David as of July 1, 2002.

After initially accepting payment from Medicaid for David's April 2002 treatment, Cook later returned Medicaid's $76,291.63

---

[1] The assignment of benefits transferred to Cook all rights of the patient, David C. Miller, and was signed by Mrs. Miller.

[2] Although Cook's invoices show charges of $145,435.92, Medicaid paid for services at its discounted rate.

payment.[3]  On December 31, 2002, Cook sent the Plan a demand letter, requesting that the Plan pay for David's medical services from April 9-22, 2002, in the amount of $137,952.27.

The Plan Administrator reviewed Cook's request for payment. The Summary Plan Description ("SPD") provides that

> [t]he Plan Administrator has complete authority to control and manage the Plan.  The Plan Administrator has full discretion to determine eligibility, to interpret the Plan and to determine whether a claim should be paid or denied, according to the provisions of the Plan as set forth in this booklet.

The Plan Administrator determined that David was not eligible for coverage for his treatment at Cook in April 2002 because Mr. Miller had not enrolled David in the Plan at that time.  In making this determination, the Plan Administrator looked to language in the SPD, which provides that a plan participant "may elect not to be covered under this Plan for any benefits, or [] may waive coverage for all coverages except Life and AD&D Insurance, or [] may waive coverage for medical and prescription drug only."  Based on the administrative record, the Plan Administrator found that during the open enrollment period, Mr. Miller had removed David from his Benefit Plan Enrollment/Change

---

[3]  At oral argument, counsel for Cook stated that Cook returned the Medicaid payment because Cook believed David was covered by the Plan provided by Mr. Miller's employer at the time services were rendered by the hospital.  Counsel further explained that although Cook was not compelled to return the payment to Medicaid, Cook was permitted by Texas law to return Medicaid's payment and seek payment from the Plan.  See 1 TEX. ADMIN. CODE § 354.2321(c).

Form by crossing through David's name and by telling Cathy Gunn of General Consolidated to remove David from his enrollment form. The Plan Administrator noted that it was not until July 1, 2002, that Mr. Miller enrolled David in the Plan. Accordingly, because David was not enrolled in the Plan during his treatment at Cook, the Plan Administrator denied Cook's request for payment.

## B.  Procedural History

On September 5, 2003, Cook filed this lawsuit against the Plan and the Plan Administrator. Cook alleged that David was a covered dependent under the Plan and that as David's assignee, it was entitled to recover payment for David's treatment in April 2002. The Plan and the Plan Administrator answered Cook's complaint and filed a third-party complaint against New England for indemnification. The parties conducted discovery and attended mediation,[4] which was not successful.

The parties subsequently filed cross-motions for summary judgment. On September 14, 2005, the district court granted summary judgment in favor of the Plan, the Plan Administrator, and New England (collectively, "Defendants"), and denied Cook's motion for summary judgment. The district court relied in part

---

[4]  In its initial scheduling order, the district court set a deadline for the parties to participate in a formal settlement conference. The parties informed the district court that they thought mediation would be more productive than a settlement conference and requested that the district court extend the settlement conference deadline so that they could mediate the case. Thereafter, the district court extended the deadline for the parties to conduct a settlement conference or mediation.

-6-

on Mr. Miller's affidavit, in which Mr. Miller averred in relevant part that:

> Neither the Plan, Hansen [the Plan Administrator], General Consolidated, New England nor anyone affiliated with them had any input into my wife's and my decision not to enroll David C. in the Plan. Nothing they said or did caused me to decide not to enroll David C. in the Plan. Additionally, I did not look to any of them for advice on whether to enroll David C. in the Plan and never asked them for any advice. This was a decision that my wife and I made by ourselves after discussing the matter with people affiliated with Medicaid and The Social Security Administration.
>
> . . . .
>
> When I instructed General Consolidated not to enroll David C. in General Consolidated's ERISA Plan, I knew I had the opportunity to have David C. as a named dependent under my health plan. However, I intentionally and voluntarily relinquished my right and David C.'s right to have him named as a dependent and plan member under my employer's ERISA health plan. I am college educated and had close to a month to make this decision. I had the opportunity to speak to an attorney or seek other assistance. This decision was made after multiple conversations with representatives of Medicaid and The Social Security Administration. From our perspective, this decision was made by my wife and I in the best interests of my family and David C. I did not intend to mislead anyone by removing my son from the enrollment form. I do not feel that I have been misled by anyone.

The district court reasoned that because Mr. Miller elected not to have David enrolled in the Plan and knowingly and voluntarily waived David's coverage under the Plan, the Plan Administrator had a valid basis for denying benefits and such denial was not an abuse of discretion. That same date, the district court entered a final judgment, dismissing all claims with prejudice and taxing all costs under 28 U.S.C. § 1920 against Cook. The bill of costs submitted by Defendants included mediation fees in the amount of

-7-

$1000.

Cook now appeals the district court's grant of summary judgment and award of mediation costs. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## II.  STANDARDS OF REVIEW

This court reviews de novo a district court's grant of summary judgment. See Mello v. Sara Lee Corp., 431 F.3d 440, 443 (5th Cir. 2005). Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

An award of costs is reviewed for abuse of discretion. See Lain v. UNUM Life Ins. Co. of Am., 279 F.3d 337, 343 (5th Cir. 2002). "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Esmark Apparel, Inc. v. James, 10 F.3d 1156, 1163 (5th Cir. 1994) (citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405-06 (1990)).

## III.  DISCUSSION

### A.  Denial of Benefits

Cook argues that the Plan Administrator abused her

discretion in denying payment to Cook for David's treatment, and that the district court's contrary conclusion was in error. Cook contends that David was automatically enrolled in the Plan because the SPD provides that "[a] Member who had similar coverage under the Employer's prior plan on the date of its termination will be covered under this Plan on the Plan effective date."[5] Cook maintains that any attempts by Mr. Miller to waive his son's coverage were ineffective and against public policy. More specifically, Cook submits that because Medicaid is the payor of last resort, it was illegal for Mr. Miller to exclude David from his Plan in order to obtain Medicaid coverage. Cook also claims that the district court should have afforded less deference to the Plan Administrator because there was an inherent conflict of interest in that Defendants benefitted financially from denying Cook's claim.

We begin with Cook's argument on the appropriate standard of review and then address the merits of the district court's determination that the Plan Administrator did not abuse her discretion.

1. Standard of Review

"Whether the district court employed the appropriate standard in reviewing an eligibility determination made by an ERISA plan administrator is a question of law," which we review

---

[5] A "Member" is defined by the SPD as "[a]n employee and any covered Dependent."

de novo.  Ellis v. Liberty Life Assurance Co. of Boston, 394 F.3d 262, 269 (5th Cir. 2004) (internal quotation marks and citation omitted).  "When, as here, the language of the plan grants discretion to an administrator to interpret the plan and determine eligibility for benefits, a court will reverse an administrator's decision only for abuse of discretion."  High v. E-Systems Inc., 459 F.3d 573, 576 (5th Cir. 2006).  "'[O]ur review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness--even if on the low end.'"  MacLachlan v. ExxonMobil Corp., 350 F.3d 472, 478 (5th Cir. 2003) (quoting Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 297 (5th Cir. 1999) (en banc)).  In making this determination, "we focus on whether the record adequately supports the administrator's decision."  Vega, 188 F.3d at 298; see also High, 459 F.3d at 576 (stating that the administrator's decision must be supported by substantial evidence in the record).

The existence of a conflict of interest, however, is a factor in the abuse of discretion inquiry.  Chacko v. Sabre, Inc., 473 F.3d 604, 610 (5th Cir. 2006).  "When a conflict of interest is shown to exist, we apply a 'sliding scale,' giving less deference to the administrator's decision in proportion to the administrator's conflict."  Id.  "This approach does not mark a change in the applicable standard, but only requires the court

-10-

to reduce the amount of deference it provides to an administrator's decision." MacLachlan, 350 F.3d at 478. "The degree to which a court must abrogate its deference to the administrator depends on the extent to which the challenging party has succeeded in substantiating its claim that there is a conflict." Id. at 479. "The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be." Vega, 188 F.3d at 297. "Where, however, only 'a minimal basis for a conflict is established, we review the decision with 'only a modicum less deference than we otherwise would.'" MacLachlan, 350 F.3d at 479 (quoting Lain, 279 F.3d at 343).

In an effort to substantiate its claim that there is a conflict, Cook points out that General Consolidated funds and administers its own medical benefit plan. This evidence, however, demonstrates only a "minimal basis for a conflict." See Chacko, 473 F.3d at 610 (finding a minimal basis for a conflict where the plaintiff demonstrated that his former employer funds and administers its own plan, "leav[ing] open the possibility that it would limit claims to reduce its liability"). Cook has presented no evidence with respect to the degree of the conflict. See id.; see also Vega, 188 F.3d at 301. Accordingly, under our sliding scale approach, "we [] review the administrator's decision with only 'a modicum less deference' than we otherwise would." Chacko, 473 F.3d at 610 (quoting Vega, 188 F.3d at 301).

-11-

2.    Analysis

In this circuit, application of the abuse of discretion standard involves a two-step process.  See Vercher v. Alexander & Alexander Inc., 379 F.3d 222, 227 (5th Cir. 2004).  The court must first determine whether the administrator's plan interpretation is legally correct.  Id.  If the administrator's interpretation is legally sound, then the inquiry ends because no abuse of discretion could have occurred.  Chacko, 473 F.3d at 611.  On the other hand, if the court concludes that the administrator did not give the plan the legally correct interpretation, the court must then determine whether the administrator's decision was an abuse of discretion.  Id.

"This court, however, is not confined to this test; we may skip the first step if we can determine the decision was not an abuse of discretion."  High, 459 F.3d at 577; see MacLachlan, 350 F.3d at 481.  Therefore, in assessing whether the Plan Administrator abused her discretion in denying Cook's claim on the basis that David was not enrolled in the Plan in April 2002, our analysis bypasses whether the Plan Administrator's interpretation was legally correct, as the record reflects that she did not abuse her discretion.

The Plan Administrator's decision finds ample support in the record.  The SPD specifically provides that an employee may opt out of any of the offered benefits, and nothing in ERISA precludes a plan participant from making a prospective election

-12-

about his coverage in an ERISA health plan.  Cf. Dist. 29, United Mine Workers of Am. v. New River Co., 842 F.2d 734, 737 (4th Cir. 1988) (recognizing that no provision in ERISA precludes the knowing and voluntary relinquishment of employee health benefits).  The evidence in the record shows that Mr. Miller chose not to enroll David in the Plan during the open enrollment period and before the effective date of the Plan, when Mr. Miller had an existing right to make changes to his coverage.[6]  Because David was not enrolled in the Plan in April 2002 when he received medical services at Cook, the Plan Administrator did not abuse her discretion in denying Cook's claim.

Cook's contention that David was automatically enrolled in the Plan, thereby making this an issue of waiver, does not change our conclusion.  Even if we were to accept Cook's argument that David was automatically enrolled under the terms of the Plan, the Plan Administrator still did not abuse her discretion in denying

---

[6]  Cook challenges our reliance on Mr. Miller's affidavit, in which Mr. Miller stated that he decided "not to enroll David C. in the Plan," that he "instructed General Consolidated not to enroll David C. in General Consolidated's ERISA Plan," and that he "intentionally and voluntarily relinquished [his] right and David C.'s right to have him named as a dependent and plan member under [his] employer's ERISA health plan."  Specifically, Cook argues that it never had an opportunity to cross-examine Mr. Miller on his affidavit.  Cook's contention is too little, too late.  "A party cannot evade summary judgment simply by arguing that additional discovery is needed, and may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts."  Adams v. Travelers Indem. Co. of Conn., 465 F.3d 156, 162 (5th Cir. 2006) (internal quotation marks and citations omitted).

Cook's claim because Mr. Miller voluntarily waived David's coverage. "[W]aiver is the intentional relinquishment or abandonment of a known right or privilege." HECI Exploration Co. Employees' Profit Sharing Plan v. Holloway (In re HECI Exploration Co.), 862 F.2d 513, 523 (5th Cir. 1988); see also High, 459 F.3d at 581. This circuit has stated, in the context of an employee welfare benefit plan governed by ERISA, that "a waiver is valid if it is 'explicit, voluntary and made in good faith.'" Guardian Life Ins. Co. of Am. v. Finch, 395 F.3d 238, 240 (5th Cir. 2004) (quoting Manning v. Hayes, 212 F.3d 866, 871 (5th Cir. 2000)). The record evidence indicates that Mr. Miller, who is college educated, knowingly and voluntarily decided not to enroll David in the Plan, even though Mr. Miller knew he had the opportunity to have David as a named dependent under the Plan. It therefore was not an abuse of discretion for the Plan Administrator to deny Cook's claim.

Finally, Cook's argument that Mr. Miller's prospective election not to cover David is void as a matter of public policy does not affect our analysis regarding whether the Plan Administrator abused her discretion. This court has never imposed a requirement on a plan administrator to determine whether a plan participant's election comports with Medicaid law, and we decline to do so today. All that ERISA requires is that substantial evidence support the administrator's decision to deny a claim, when, as here, the administrator is vested with the

-14-

discretion to determine eligibility for plan benefits.  Because

the record here adequately supports the Plan Administrator's

decision, we find no error in the district court's decision to

uphold the Plan Administrator's denial of Cook's claim.[7]

## B.    Award of Mediation Costs

Cook argues that the district court should not have taxed

mediation costs against it because mediation expenses do not fall

within the limited category of costs that may be taxed under 28

U.S.C. § 1920.  In support of its position, Cook points to Mota

v. University of Texas Houston Health Science Center, 261 F.3d

512 (5th Cir. 2001).

In Mota, this court addressed whether the district court had

abused its discretion in taxing mediation fees under § 1920 in a

Title VII action.  261 F.3d at 529-30.  The Mota court began its

analysis by examining 28 U.S.C. § 1920.  See id. at 529.  Under

§ 1920, a court may tax the following costs:

> (1)  Fees of the clerk and marshal;
> (2)  Fees of the court reporter for all or any part of
>      the  stenographic  transcript  necessarily  obtained
>      for use in the case;
> (3)  Fees and disbursements for printing and witnesses;
> (4)  Fees  for  exemplification  and  copies  of papers
>      necessarily obtained for use in the case;
> (5)  Docket fees under section 1923 of this title;
> (6)  Compensation   of   court   appointed experts,
>      compensation of interpreters, and salaries, fees,
>      expenses,  and  costs  of  special  interpretation
>      services under section 1828 of this title.

---

[7]  Accordingly, we need not address Defendants' alternative
arguments in favor of affirming the district court.

The court noted that "[t]he Supreme Court has indicated that federal courts may only award those costs articulated in section 1920 absent explicit statutory or contractual authorization to the contrary." Id. (citing Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 444-45 (1987)).

Turning to the text of § 1920, the Mota court concluded that the district court "erred in taxing [the losing party] with the costs of mediation [because the expense did not fall] within section 1920." Id. at 530. The court further determined that nothing in Title VII supported the award of mediation fees because "mediation costs do not fall within the limited category of expenses taxable under Title VII." Id.; see also 42 U.S.C. § 2000e-5(k) (providing that "the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person").

The reasoning in Mota cuts against the district court's decision to award mediation fees in this ERISA case. First, the language in § 1920 has not changed since the Mota court concluded that mediation fees do not fall within any of the categories of expenses listed in the statute. Second, like Title VII's provision on costs, the applicable ERISA subsection on costs does not explicitly authorize the award of mediation expenses. See 29 U.S.C. § 1132(g)(1) ("[T]he court in its discretion may allow a

-16-

reasonable attorney's fee and costs of action to either party.").

Defendants assert, however, that <u>Mota</u> is limited to Title VII cases and should not be applied in this ERISA action. Defendants instead point to this circuit's en banc decision in <u>Gaddis v. United States</u>, 381 F.3d 444 (5th Cir. 2004), as support for the district court's award of mediation fees in this case. According to Defendants, mediation fees are recoverable expenses because mediators essentially act as court appointed experts, a cost recoverable under § 1920(6).

We disagree.  In <u>Gaddis</u>, the court held that district courts may tax guardian *ad litem* fees as court costs against nonprevailing parties, including the government in Federal Tort Claims Act cases.  381 F.3d at 447.  In analyzing the issue, the court identified three alternative grounds for permitting the taxation of guardian *ad litem* fees.  First, the court reasoned that Federal Rule of Civil Procedure 17(c) constituted the alternative express statutory authorization required by the Supreme Court in <u>Crawford Fitting</u> to provide district courts with the inherent authority and discretion to tax guardian *ad litem* fees as costs against nonprevailing parties.[8]  <u>Id.</u> at 452-55. Second, the court determined that guardians *ad litem* reasonably

_____

   [8]  Rule 17(c) provides in relevant part: "The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person."

fit within the meaning of the phrase "court appointed experts" in § 1920(6), thereby allowing district courts to tax their compensation as costs per § 1920.  Id. at 455-57.  And third, the court reasoned that precedent subsequent to Crawford Fitting allowed for the taxation of guardian *ad litem* fees as costs.  Id. at 457-59.

None of the three alternate grounds for permitting the taxation of guardian *ad litem* fees in Gaddis is applicable to the taxation of mediation expenses here.  First, there is no statutory or contractual provision that permits the taxation of the cost in question.  As explained above, the ERISA statute on costs, 29 U.S.C. § 1132(g)(1), does not constitute an explicit authorization to tax mediation costs, nor does it seem reasonable to construe the provision as a blanket power to tax costs.  See Agredano v. Mut. of Omaha Cos., 75 F.3d 541, 544 (9th Cir. 1996) (holding that § 1132(g)(1)'s "allowance for 'costs of action' empowers courts to award only the types of 'costs' allowed by 28 U.S.C. § 1920"); cf. Holland v. Valhi Inc., 22 F.3d 968, 979-80 (10th Cir. 1994) (rejecting the argument that 29 U.S.C. § 1132(g)(1) expressly authorized taxation of expert witness fees).  Likewise, the source of the district court's authority to authorize the use of mediation in a civil action does not support the taxation of mediation fees.  See 28 U.S.C. §§ 651-652.  There is absolutely nothing in these statutory provisions that would

-18-

expressly or implicitly provide district courts with the inherent authority or discretion to award mediation fees as costs.

Second, unlike the guardian *ad litem* fees in <u>Gaddis</u>, mediation expenses do not reasonably fit within the statutory language of § 1920(6), which allows for "[c]ompensation of court appointed experts." Nowhere does the statute define "court appointed experts."[9] That term is defined elsewhere as an "impartial expert" or as "[a]n expert who is appointed by the court to present an unbiased opinion." BLACK'S LAW DICTIONARY 619 (8th ed. 2004).

Although the court in <u>Gaddis</u> did not define court appointed expert, it identified two characteristics that indicate when one "reasonably serve[s] as [an] expert[]." 381 F.3d at 456. The court explained that

> guardians *ad litem* appointed by the court reasonably serve as experts in the sense that they liaise with the court and are charged with the important duty of providing their insight as to how the judicial process is or is not comporting with the best interests of the minor or incompetent person involved.

---

[9] In <u>Gaddis</u>, this court concluded that we are not constrained to define "court appointed experts" as that term is used in Federal Rule of Evidence 706. 381 F.3d at 456-57 ("While there is some indication in the legislative history that court appointed expert as used in § 1920(6) refers to a court appointed expert as appointed pursuant to Federal Rule of Evidence 706, the plain statutory language of § 1920(6) does not so narrowly limit the interpretation of court appointed expert. This *en banc* Court is thus not constrained to so narrowly interpret the category of court appointed expert.") (internal citation omitted). <u>Contra</u> <u>In re Cardizem CD Antitrust Litig.</u>, 481 F.3d 355, 363-64 (6th Cir. 2007).

_Id._  Under the Gaddis interpretation, experts "liaise with the court" on the matter in which the court requires assistance and "are charged with the important duty of providing their insight" to the court regarding that aspect of the case.  See _id._  The Gaddis court reasoned that guardians _ad litem_ reasonably fit within the definition of "court appointed experts" under § 1920(6) because a "guardian _ad litem_'s special duty is to submit to the court for its consideration and decision every question involving the statutory and constitutional rights of the minor that may be affected by the action."  _Id._

Turning to the issue of whether a mediator reasonably fits within the scope of a court appointed expert, we examine the definition and role of a mediator.  The prevailing definition of a mediator is "[a] neutral person who tries to help disputing parties reach an agreement."  BLACK'S LAW DICTIONARY 1003 (8th ed. 2004); see also 1 JAY E. GRENIG, ALTERNATIVE DISPUTE RESOLUTION § 4.1 (3d ed. 2005) (stating that "[m]ediation involves a neutral third party--the mediator--whose function is to assist the parties in their negotiations").  Similarly, the Uniform Mediation Act defines mediation as "a process in which a mediator facilitates communication and negotiation between parties to assist them in reaching a voluntary agreement regarding their dispute."  UNIF. MEDIATION ACT § 2(1) (2001).

From these descriptions it is apparent that, in contrast to

guardians *ad litem*, mediators lack the essential characteristics of court appointed experts, under both the general definition and the interpretation of the Gaddis court.  First, the role of mediators is to facilitate negotiations between the parties in an unbiased manner, not to liaise with the court.  As a result, mediators "usually deal[] directly with the parties" during mediation and need not communicate with the court at all. SEE GRENIG, supra, § 4.41 (describing the role of mediators in terms of interaction with the parties).  In addition, because the discussions in mediation are frequently confidential, it is questionable whether a mediator could ethically communicate an opinion to a court at all.  See id. § 4:10 (explaining that "[s]tatements made during mediation may be accorded protection by federal or state laws"); see also N.D. TEX. CIVIL JUSTICE EXPENSE & DELAY REDUCTION PLAN, at 6 (rev. May 2002) (providing that "[a]ll communications made during ADR procedures [including mediation] are confidential and protected from disclosure").  Indeed, aside from acting as neutral parties, mediators appear to share no other significant common qualities with court appointed experts. Therefore, mediators fall outside a reasonable interpretation of court appointed experts.

Third and finally, contrary to the precedent that supported the en banc court's decision in Gaddis, case law from this circuit and other circuits does not support the taxation of mediation fees as costs under § 1920.  As discussed earlier, this

court in <u>Mota</u> held that mediation fees are not taxable costs under § 1920.  <u>See</u> 261 F.3d at 530.  In addition to <u>Mota</u>, decisions from two other circuits have considered whether mediation expenses fall within § 1920, and both courts have concluded that they do not.  In <u>Brisco-Wade v. Carnahan</u>, the Eighth Circuit held that "the district court abused its discretion in taxing the mediator's fee against defendants" in part because "section 1920 does not list mediation fees as taxable costs, and we have found no statutory authority . . . permitting the taxation of mediation fees . . . ."  297 F.3d 781, 782 (8th Cir. 2002).  Similarly, in <u>Sea Coast Foods, Inc. v. Lu-Mar Lobster & Shrimp, Inc.</u>, the Ninth Circuit rejected the appellants' attempt to recover mediation fees, concluding that "[n]othing in 28 U.S.C. § 1920 provides for the costs of a mediator."  260 F.3d 1054, 1061 (9th Cir. 2001).[10]

Accordingly, because mediation fees are not explicitly authorized by § 1920, and because this circuit's en banc decision

---

[10]  Several district courts have also agreed that mediation fees should not be taxed as costs under § 1920.  <u>See, e.g.</u>, <u>Hodak v. City of St. Peters</u>, No. 4:04-CV-01099, 2007 WL 674249, *3 (E.D. Mo. Feb. 28, 2007); <u>Condon v. Hunting Energy Servs. L.P.</u>, No. H-04-3411, 2006 WL 2882857, *7 (S.D. Tex. Oct. 4, 2006); <u>JES Props., Inc. v. USA Equestrian, Inc.</u>, 432 F. Supp. 2d 1283, 1296 (M.D. Fla. 2006); <u>Zeuner v. Rare Hospitality Int'l, Inc.</u>, 386 F. Supp. 2d 635, 640 (M.D.N.C. 2005); <u>Bernard v. Int'l Portfolio Mgmt., Inc.</u>, No. 04-CV-60671, 2005 WL 1840157, *5 (S.D. Fla. July 25, 2005); <u>Firestine v. Parkview Health Sys., Inc.</u>, 374 F. Supp. 2d 658, 672 (N.D. Ind. 2005); <u>Bickers v. U.S. Home Mortgage Corp.</u>, No. 3:96-CV-0959, 1997 WL 340947, at *2 (N.D. Tex. June 18, 1997).

in <u>Gaddis</u> does not support the district court's award of mediation fees as taxable costs, we hold that the district court abused its discretion in awarding mediation expenses as taxable costs to Defendants under § 1920 in this ERISA action.  <u>Cf.</u> <u>Mota</u>, 261 F.3d at 530.  We therefore vacate the district court's award of mediation fees.

## IV.  CONCLUSION

For the reasons stated above, we AFFIRM the district court's order granting summary judgment in favor of Defendants-Appellees and VACATE the award of mediation fees as taxable costs under 28 U.S.C. § 1920.

AFFIRMED IN PART; VACATED IN PART.