# NO. 12-17-00214-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:* | *§* | |
| *E.B.,* | *§* | *ORIGINAL PROCEEDING* |
| *RELATOR* | *§* | |

## *MEMORANDUM OPINION*

Relator E.B. filed this petition for writ of mandamus, contending that the trial court erred by denying his right to revoke consent to an agreement between the parties and entering temporary orders based on that agreement.  We conditionally grant the petition in part and deny it in part.[1]

## BACKGROUND

The underlying suit is a divorce proceeding between E.B. and M.B.  On June 2, 2016, E.B. filed an original petition for divorce in Smith County, Texas, stating that the parties were married on January 15, 2011, and have two children, Z.D.B. and D.M.B.  He requested that the parents be appointed joint managing conservators and that he should be appointed as the conservator with the exclusive right to designate the children's primary residence.  On the same day, M.B. filed an application for a protective order against E.B. in Travis County, Texas.  In her affidavit supporting the application, she alleged that while in a Dallas, Texas, hotel, E.B. pushed her on the bed, slapped her twice, and "karate chopped" her on the nose.  She stated that her nose was fractured in two places and that he tried to prevent her from calling the police. M.B. stated that criminal charges were filed against E.B.  On August 1, 2016, the trial court in Smith County, Texas, appointed Cynthia Stevens Kent as the amicus attorney for the parties' children.

On January 22, 2017, the parties, pursuant to Rule 11 of the Texas Rules of Civil Procedure, Article 6.604 of the Texas Family Code, an "informal settlement conference," and

---

[1] The real party in interest is M.B. The respondent is the Honorable Jason Ellis, Judge of the County Court at Law, Smith County, Texas.

"further discussions," made a written agreement entitled "Rule 11/Informal Settlement Conference Agreement." The Agreement was signed by the parties and their respective attorneys. This Agreement included the following language on its first page, capitalized and in bold-faced print:

**IT IS AGREED AND UNDERSTOOD THAT THIS SETTLEMENT, ONCE SIGNED AND FILED WITH THE COURT, IS NOT SUBJECT TO REVOCATION.**

Further, the Agreement included provisions relating to visitation and possession of the children, holiday possession, possession of passports and ability to transport the children out of the country, appointment of the parties as joint managing conservators, behavior of the parties during possession, and designation of the party with the exclusive right to make educational decisions for the children, to determine the children's primary residence, and to receive child support. The agreement also made provisions for the payment of child support, tuition, fees, extracurricular activities, and health insurance. Finally, the agreement stated that all other issues related to the children would be pursuant to Kent's recommendations.

However, the agreement also included provisions relating to temporary spousal support, civil injunctions against E.B., payment of attorney's fees, and payments for the amicus attorney and mediator. The agreement stated that the former protective order was dismissed with prejudice, that the property division, spousal maintenance, attorney's fees, and other property related issues would be determined by the court or by agreement, and that M.B. agreed to cooperate with E.B.'s counsel in requesting that criminal charges be dismissed against E.B.

On March 31, 2017, E.B. filed a petition to modify the Agreement, stating that a material and substantial change of circumstances had occurred. Shortly thereafter, M.B. filed a notice of filing the Agreement, referring to it as a "[s]ection 6.604, Texas Family Code" written settlement agreement. On April 25, 2017, E.B. formally revoked his consent to the Agreement. After a hearing on E.B.'s revocation, the trial court denied E.B.'s right to withdraw his consent to the Agreement, denied the modification he requested, and entered temporary orders reflecting the Agreement. This original proceeding followed.

2

In his sole issue, E.B. contends that the trial court erred by denying his right to revoke consent to the Agreement, and entering temporary orders based on that Agreement. The Real Party in Interest, M.B., disagrees, arguing that the Agreement was the result of mediation, that it constituted a mediated settlement agreement and, under the Texas Family Code, was irrevocable. Moreover, M.B. contends that E.B. was estopped from challenging the Agreement because he accepted the benefits of it to her detriment.

## Availability of Mandamus

Mandamus relief is available when, under the circumstances of the case, the facts and law permit the trial court to make but one decision—and the trial court has refused to make that decision—and remedy by appeal to correct the ruling is inadequate. *Proffer v. Yates*, 734 S.W.2d 671, 673 (Tex. 1987). Mandamus is allowed under the Texas Family Code under these circumstances. *See **In re Knotts***, 62 SW.3d 922, 923 n.1 (Tex. App.–Texarkana 2001, orig. proceeding). Because temporary orders are not appealable, mandamus is an appropriate remedy when a trial court abuses its discretion in issuing temporary orders in a SAPCR. *See **In re Derzapf***, 219 S.W.3d 327, 335 (Tex. 2007) (orig. proceeding).

To be entitled to mandamus relief, E.B. must establish a trial court clearly abused its discretion and he lacks an adequate remedy by appeal. ***In re Green***, 385 S.W.3d 665, 668 (Tex. App.–San Antonio 2012, orig. proceeding) (*citing **In re Prudential Ins. Co. of Am.***, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding)). An abuse of discretion with respect to factual matters occurs if the record establishes the trial court could reasonably have reached only one decision. ***Id.*** at 668–69 (*citing **Walker v. Packer***, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding)).

## Applicable Law

A mediated settlement agreement is binding on the parties if the agreement (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation; (2) is signed by each party to the agreement; and (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed. TEX. FAM. CODE ANN. § 153.0071(d) (West 2014). If a mediated settlement agreement meets the requirements of [Texas Family Code subsection 153.0071(d)], a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or

3

another rule of law. *Id.* § 153.0071(e). The unilateral withdrawal of consent does not negate the enforceability of a mediated settlement agreement in a suit affecting the parent-child relationship. *In re Circone*, 122 S.W.3d 403, 406-07 (Tex. App.—Texarkana 2003, no pet.); *see Mullins v. Mullins*, 202 S.W.3d 869, 876 (Tex. App.—Dallas 2006, pet. denied) (interpreting identical language in section 6.602 of the Texas Family Code addressing mediated settlement agreements in divorce action). Moreover, a mediated settlement agreement necessarily requires mediation and a mediator. *Lee v. Lee*, 158 S.W.3d 612, 614 (Tex. App.—Fort Worth 2005, no pet.).

A written settlement agreement reached at an informal settlement conference is binding on the parties if the agreement (1) provides, in a prominently displayed statement that is in boldfaced type or in capital letters or underlined, that the agreement is not subject to revocation; (2) is signed by each party to the agreement; and (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed. TEX. FAM. CODE ANN. § 6.604(b) (West 2006). If a written settlement agreement meets the requirements of [Texas Family Code subsection 6.604(b)], a party is entitled to judgment on the settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law. *Id.* § 6.604(c).

Unlike agreements concerning the dissolution of marriage, which by statute are not revocable, the statutes concerning unmediated agreements on child support, conservatorship, and possession of children lack similar language stating they are irrevocable. *In re M.A.H.*, 365 S.W.3d 814, 820 (Tex. App.—Dallas 2012, no pet.). Parties to a divorce proceeding may enter a written agreement concerning conservatorship and possession of a child. *See* TEX. FAM. CODE ANN. § 153.007 (West 2014). Additionally, a party may revoke his consent to a Rule 11 agreement at any time before judgment is rendered. *See ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d 303, 309 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *S & A Restaurant Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex. 1995). An agreed judgment rendered after one of the parties revokes his consent is void. *See Leal*, 892 S.W.2d at 857; *Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex. 1995) ("court cannot render a valid agreed judgment absent consent at the time it is rendered"); *Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex. 1983) (holding that when trial court has knowledge that party does not consent to judgment, trial court should refuse to sanction agreement by making it the judgment of the court).

The definition of "mediation" is a method of nonbinding dispute resolution involving a neutral third party who tries to help the disputing parties reach a mutually agreeable solution.

4

BLACK'S LAW DICTIONARY 1130 (10th ed. 2014). A "mediator" is a neutral person who tries to help disputing parties reach an agreement. *Id.* The role of a mediator is to facilitate negotiations between the parties in an unbiased manner, not to liaise with the court. *Cook Children's Med. Ctr. v. The New England PPO Plan of Gen. Consol. Mgmt., Inc.*, 491 F.3d 266, 276 (5th Cir. 2007). As a result, mediators "usually deal[ ] directly with the parties" during mediation and need not communicate with the court at all. *See id.* at 276-277. In addition, because the discussions in mediation are frequently confidential, it is questionable whether a mediator could ethically communicate an opinion to a court at all. *See id.* at 277.

In contrast, an "amicus attorney" means an attorney appointed by the court in a suit, other than a suit filed by a governmental entity, whose role is to provide legal services necessary to assist the court in protecting a child's best interests rather than provide legal services to the child. TEX. FAM. CODE ANN. § 107.001(1) (West Supp. 2016). In other words, an amicus attorney is appointed specifically to assist the court. *O'Connor v. O'Conner*, 245 S.W.3d 511, 515 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Some of an amicus attorney's statutory duties include participating in the conduct of the litigation to the same extent as an attorney for a party, encouraging settlement and the use of alternative forms of dispute resolution, and to review and sign, or decline to sign, a proposed or agreed order affecting the child. TEX. FAM. CODE ANN. § 107.003(a)(1)(F), (H), (I) (West Supp. 2016). Further, the amicus attorney shall advocate the best interests of the child after reviewing the facts and circumstances of the case. *Id.* § 107.005(a) (West 2014).

**Analysis**

Here, the question is whether the Agreement constituted a mediated settlement agreement. According to the face of the Agreement, it was the result of an informal settlement conference and further discussions. *See id.* § 6.604(b). At the hearing, the evidence showed that the parties attempted mediation with a mediator, Ric Freeman. According to E.B.'s attorney, however, no mediation settlement agreement was signed at that time. M.B.'s attorney also stated that the parties and the amicus attorney attempted to resolve their differences in a telephone conference. A series of emails between the parties and the amicus attorney were admitted as evidence at the hearing. These emails revealed settlement discussions between the parties and the amicus attorney. Moreover, the Agreement stated that it was made pursuant to section 6.604 (informal settlement conference), not section 153.0071 (mediation settlement agreement). *Compare id.* § 6.604(b) *with*

5

*id.* § 153.0071(d). Further, the trial court stated that it was "going to enforce the Rule 11." From this evidence, we cannot state that the Agreement was a mediated settlement agreement on its face.

However, M.B.'s attorney argues that the Agreement was a mediated settlement agreement because the parties mediated the case with both Freeman and Kent, the amicus attorney. Regarding the mediation with Freeman, there is no evidence that the mediation resulted in a signed mediated settlement agreement or that Freeman facilitated future discussions that resulted in an agreement. He did not participate in, and was not copied on, any of the emails admitted at the hearing. Nor is there any memorialization in the Agreement that it was the result of mediation. Thus, there is a lack of evidence to support M.B.'s argument that the Agreement was the result of a mediation with Freeman. *See Lee*, 158 S.W.3d at 614 (stating that a mediated settlement agreement necessarily requires mediation and a mediator).

Nonetheless, M.B. contends that Kent acted as a mediator in the case. As noted above, a "mediator" is a neutral person who tries to help disputing parties reach an agreement. *See* BLACK'S LAW DICTIONARY 1130. A mediator's role is not to liase with the court. *See Cook Children's Med. Ctr.*, 491 F.3d at 276. An amicus attorney, by contrast, provides legal services to assist the court in protecting a child's best interest. *See* TEX. FAM. CODE ANN. § 107.001(1). In the trial court's order appointing Kent, she was ordered to participate in the conduct of litigation to the same extent as an attorney for a party, to "encourage settlement and the use of alternative forms of dispute resolution," and to review and sign, or decline to sign, a proposed or agreed order affecting the children. The trial court also ordered Kent to advocate the best interests of the children after reviewing the facts and circumstances of the case. Kent did so in this case when she discussed the Agreement with the court and opined that it was a parenting plan. Because of Kent's role and duties as the amicus attorney, she cannot be a neutral third party in this case as required of a mediator. *See id.* Thus, the Agreement is not the result of a mediation with Kent. *See Lee*, 158 S.W.3d at 614.

Because the Agreement was not the result of a mediation with a mediator, we conclude that the Agreement was not a mediated settlement agreement pursuant to section 153.071(d). *See* TEX. FAM. CODE ANN. § 153.0071(d). Moreover, unmediated agreements on child support, conservatorship, and possession of children lack language stating they are irrevocable. *See In re M.A.H.*, 365 S.W.3d at 820. Thus, E.B. was permitted to revoke his consent to the Agreement at any time before judgment was rendered. *See ExxonMobil Corp.*, 174 S.W.3d at 309; *Leal*, 892

6

S.W.2d at 857. In this case, E.B. revoked his consent to the Agreement before the trial court rendered its orders on the Agreement. Therefore, when the trial court rendered its temporary orders, there was no longer an agreement in place. *See In re M.A.H.*, 365 S.W.3d at 820. Accordingly, the trial court could not enter temporary orders on provisions regarding child support, conservatorship, possession, and other terms involving the children in accordance with the Agreement based solely on that agreement. *See id.*

However, our discussion is not complete. Although the Agreement did not meet the requirements of a mediated settlement agreement, it appears to meet the requirements of Section 6.604 of the Texas Family Code governing an informal settlement conference on issues concerning the dissolution of marriage. *See* TEX. FAM. CODE ANN. § 6.604(a), (b). The Agreement provided (1) in a prominently displayed statement that was in boldfaced type and capital letters, that the agreement was not subject to revocation; (2) was signed by each party to the agreement; and (3) was signed by both party's attorneys who were present at the time the agreement was signed. *See id.* § 6.604(b). Because the Agreement met these requirements, M.B. was entitled to judgment on the Agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law. *See id.* § 6.604(c). However, M.B. was only entitled to judgment regarding those portions of the Agreement pertaining to the dissolution of marriage, i.e., temporary spousal support, civil injunctions against E.B., and payment of attorney's fees, mediator, and amicus attorney. Therefore, the trial court did not abuse its discretion in entering temporary orders on provisions regarding the dissolution of the marriage in accordance with the Agreement. *See id.*

Finally, M.B. argues that E.B. is estopped from challenging the Agreement because he accepted the benefits of it to her detriment. The acceptance-of-benefits doctrine is based on estoppel and rooted in equity. *Kramer v. Kastleman*, 508 S.W.3d 211, 227 (Tex. 2017). Thus, a party who accepts the benefits of a judgment is estopped from challenging the benefits of the judgment on appeal. *In re M.A.H.*, 365 S.W.3d at 818; *Waite v. Waite*, 150 S.W.3d 797, 803 (Tex. App.-Houston [14th Dist.] 2004, pet. denied). This doctrine often arises in divorce cases when one spouse accepts some of the benefits of the judgment and then tries to appeal the judgment. *In re M.A.H.*, 365 S.W.3d at 818. M.B. has the burden of proving the acceptance-of-benefits doctrine. *See id.*

Here, we have determined that the property provisions in the Agreement are irrevocable. As such, the benefits accepted involve provisions in the Agreement pertaining only to the children.

7

We must determine whether M.B. proved E.B. is estopped from challenging the Agreement, and whether M.B. will be unfairly prejudiced. *See Kramer*, 508 S.W.3d at 227; *In re M.A.H.*, 365 S.W.3d at 818. Several nonexclusive factors inform this inquiry, including the presence of actual or reasonably certain prejudice, and whether any prejudice is curable. *See Kramer*, 508 S.W.3d at 229.

In her reply brief, M.B. asserts that E.B. has already received all of his benefits under the Agreement including dismissal of the pending Travis County protective order with prejudice and dismissal of the Travis County criminal proceeding. M.B. argues that she gave up significant advantages as a result of the Agreement including the ability to fully litigate issues concerning the party's access to the children and the ability to rebut the presumption that joint managing conservatorship is in the best interest of the children.[2] We do not agree.

Any prejudice that M.B. will suffer as the result of granting the writ pertaining to provisions regarding the children is curable. *See id.* M.B. has the ability to fully litigate issues concerning the party's access to the children in the current case. *See* TEX. FAM. CODE ANN. § 153.001-153.317 (West 2014 & Supp. 2016). The vacating of the temporary orders regarding issues pertaining to the children will not prevent her ability to do so. Regarding M.B.'s ability to rebut the presumption that joint managing conservatorship is in the best interest of the children, a finding by the trial court of a history of family violence involving a parent removes the presumption. *See id.* § 153.131(b) (West 2014); *see also Stallworth v. Stallworth*, 201 S.W.3d 338, 347 (Tex. App.—Dallas 2006, no pet.). If credible evidence supports a history or pattern of past or present abuse, then the trial court may not appoint joint managing conservators. *See* TEX. FAM. CODE ANN. § 153.004(b) (West 2014).[3] Moreover, a history of family violence can be established by a single incident. *See id.* § 153.004(b); *In re Marriage of Stein*, 153 S.W.3d 485, 489 (Tex. App.—Amarillo 2004, no pet.). Thus, any prejudice that M.B. suffers from dismissal of the protective order is curable by credible evidence of even a single incident of abuse leading to a finding of family violence by the trial court. *See In re Marriage of Stein*, 153 S.W.3d at 489. Because we cannot conclude that M.B. will be unfairly prejudiced and any prejudice she might

---

[2] "It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of a child. A finding of a history of family violence involving the parents of a child removes the presumption under this subsection." *See* TEX. FAM. CODE ANN. § 153.131(b) (West 2014).

[3] In determining whether there is credible evidence of a history or pattern of past or present abuse, the trial court shall consider whether a protective order was rendered against the parent during the two year period preceding the filing of the suit or while the suit was pending. *See* TEX. FAM. CODE ANN. § 153.004(f) (West 2014).

suffer is curable, we conclude that M.B. failed to prove that E.B. is estopped from challenging the Agreement. *See **Kramer***, 508 S.W.3d at 227-29.

## CONCLUSION

The trial court issued temporary orders based on a Rule 11/Informal Conference Agreement between the parties. However, we have held that the Agreement did not meet the requirements of a mediated settlement agreement and that E.B. was permitted to revoke his consent before the judgment was rendered. Therefore, the provisions regarding child support, conservatorship, possession, and other terms involving the children are void, and the trial court abused its discretion in entering temporary orders based on the Agreement. Accordingly, we ***conditionally grant*** the writ of mandamus as to the provisions regarding child support, conservatorship, and possession in the temporary orders. However, we ***deny*** the petition as to the provisions in the temporary orders pertaining to the dissolution of marriage. The Agreement met the requirements of a written settlement agreement pursuant to Section 6.604(d) of the Texas Family Code, and M.B. was entitled to judgment on the settlement agreement. We are confident that, within fifteen days of this opinion and order, Respondent will issue an order vacating the temporary order insofar as they pertain to the provisions relating to child support, conservatorship, possession, and other terms involving the children. The writ will issue only if he fails to do so. Our stay is lifted.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered October 18, 2017.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

9



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# ORDER

**OCTOBER 18, 2017**

**NO. 12-17-00214-CV**

**E. B.,**
Relator
V.
**HON. JASON ELLIS,**
Respondent

## ORIGINAL PROCEEDING

ON THIS DAY came to be heard the petition for writ of mandamus filed by E.B.; who is the relator in Cause No. 16-1151-E, pending on the docket of the County Court at Law of Smith County, Texas. Said petition for writ of mandamus having been filed herein on July 7, 2017, and the same having been duly considered, because it is the opinion of this Court that the said petition for writ of mandamus be, and the same is, hereby **conditionally granted in part** as to provisions relating to child support, conservatorship, possession, and other terms involving the children.

And because it is further the opinion of this Court that the trial judge will act promptly and vacate his temporary order insofar as they pertain to the provisions relating to child support, conservatorship, possession, and other terms involving the children, the writ will not

issue unless the **HONORABLE JASON ELLIS** fails to comply with this Court's order within fifteen (15) days of this order.

It is further ORDRED that the writ of mandamus regarding the provisions in the temporary orders pertaining to the dissolution of marriage are **denied**. All costs incurred in this appeal are assessed against the party incurring same.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*